## WILSON vs. SHEPPARD.

[TROVER BY WIFE FOR CONVERSION OF HER SEPARATE CHATTELS.]

1. *Husband incompetent witness for wife.*—The rule which renders husband and wife,
unless in a few excepted cases, incompetent to testify for or against each
other, has its foundation not only in the identity of their legal rights, but
in a wise public policy; and there is nothing in any of the statutes of this
State, securing to married women their separate estates, which requires
that an exception should be made of cases in which the husband is called
upon to testify to his acts in the capacity of trustee for his wife.

2. *Wife's right to property purchased by husband with her separate funds.*—If the hus-
band purchases property with money belonging to his wife's separate estate,
other than the income or profits thereof, and takes the title in his own
name, the law will compel him, at the instance of his wife, to convey the
property to her; and therefore, if he voluntarily conveys it to her, though
for the purpose of preventing his creditors from taking it in payment of
his debts, his conveyance will be sustained.

APPEAL from the Circuit Court of Chambers.

Tried before the Hon. ROBERT DOUGHERTY.

THIS action was brought, in August, 1853, by Mrs. Harriet
E. Wilson, the appellant, who is the wife of Samuel W. Wil-
son, to recover damages for the defendant's conversion of
several buggies and other articles of personal property,
which the plaintiff claimed as part of her separate estate.
Under the rulings of the court on the trial, the plaintiff was

compelled to take a non-suit with a bill of exceptions, which states that she offered the following proof:

" 1. Evidence tending to show that the defendant purchased the property sued for, on the 8th September, 1852, at a constable's sale under process in favor of one Norris and against Samuel W. Wilson, plaintiff's husband, and took the same into his possession, and has ever since continued to use the same as his property; and the value of the property. 2. In order to show title to this property in herself, she read in evidence a certified copy of the last will and testament of Nancy Sale," which was admitted to probate, in Madison county, on the 27th August, 1849, and by which said testatrix made her five nieces, one of whom was Mrs. Harriet Wilson, her residuary legatees. " 3. Plaintiff then offered evidence, tending to show that, in December, 1849, her said husband went to North Alabama, and got from the executor of said will $500 of the money coming under it to her, and receipted for it in her name, and as her agent; that on the 10th March, 1850, she sent her brother-in-law to get the remainder for her, which he obtained in March, 1850, receipted for it in her name, and as her agent, brought the money (about $1,252 65) to Rockford, where plaintiff then lived with her husband and children, and gave it over into her own possession in American gold. 4. Plaintiff then proved, that her said husband, when they moved to Rockford with their children, in 1849, had no visible property of any kind, except a little household furniture, not more than the law would allow him, and a wagon and four horses, which had but one eye among them, and which had been purchased by him on a credit a short time before, and were sold not long after to pay the debt contracted in purchasing them; that he was a man of intemperate habits, and had at times gambled, and had the reputation of one who gamed; that he had failed, many years before, in business as a merchant, and owed a large number of debts from that cause when the money was received by her under said will.

" The plaintiff then proved facts tending to show, that her said husband got a portion of the gold coin which she had received as aforesaid from her brother-in-law, viz., about $500, in the spring of 1851, and went to New Orleans, and

bought some flour, bacon, candles, &c., and took them to West Point on the eastern boundary of this State, and commenced selling them out; that he also bought of one Norris a half interest in a livery-stable in Chambers county, which included the property now sued for, some time in June or July, 1851, paid about $250 on account of it, and took his bond to make title to him when the purchase money ($1,000) was paid; that when he made this purchase, his wife was not present; that he did not say that he was making said purchase with his wife's means, or as agent or trustee for her, but made the trade in his own name, and took the bond in his own name. The proof further tended to show, that plaintiff's husband, in making this purchase, used the said means received by his wife from the estate of Nancy Sale; that about the 6th July, 1851, after said purchase, he went to said Norris, and told him that he was deeply in debt, that he owed thousands about Wetumpka, that these debts were about to come on him, that one had been already sent over, that he had concealed this from him when he made said purchase, that he now wished him to help him (Wilson) to fix the property so that his creditors could not get at it, and for that purpose wanted him to take back the old papers, and to give him a bond for title as trustee for his wife, in order to keep off his creditors; that said Norris agreed to do this, and the old papers were then canceled, and the new bond given as proposed on the 6th July, 1851; that said Wilson, at the same time, gave notes for the balance of the purchase money, signed 'Harriet E. Wilson, by her trustee, S. W. Wilson.' The proof further tended to show, that said Wilson did not state that the moneys used by him in the purchase were his wife's separate estate, or that he was acting for her as agent or trustee in making the purchase at first; but on this point the proof was conflicting,—tending also to show that he did make these disclosures. The proof tended to show, also, that after this arrangement of 6th July, and some time in the spring of 1852, and after about $500 had been paid for the property out of the plaintiff's moneys, the property was levied on, and sold, for the debts of said Samuel W. Wilson, and was bought by the defendant in this action. At the time of the levy and sale, the property was in the

actual use of said S. W. Wilson, and of the person who owned the other half interest in it; the family of Wilson subsisting on the proceeds of plaintiff's half.

" The plaintiff then offered her said husband as a witness, to prove that he had no means, except what money he got from her as aforesaid, at the time he made the said purchase of groceries in New Orleans, and at the time he purchased the half interest in said livery-stable; that he had used her means in making these purchases, and that all he had paid was hers; that he did not know, at the time he made said trade·in his own name, how to fix the papers; and that he had the alteration made in the bond and notes, under the advice of counsel whom he consulted on the subject. The court, on objection by defendant, refused to let said Wilson prove these, or any other facts, separately or collectively, on the ground that he was an incompetent witness for his wife; and to this ruling plaintiff excepted.

" On the evidence here set out, the court then charged the jury, that if said Wilson made the purchase of the property now sued for, in the first instance, in his own name, and afterwards had the papers changed as shown, so as to make him trustee for his wife, for the purpose of preventing his creditors from taking it in payment of his debts, then the plaintiff could not recover in this action, although they might be satisfied from the evidence that the moneys used in paying for the property were the separate property of the plaintiff; and to this charge the plaintiff excepted."

The charge given, and the refusal to allow Wilson to be examined as a witness, are now assigned as error.

L. E. PARSONS, for the appellant, contended,—

1. That the appellant's husband was a competent witness to testify to the facts proposed to be proved by him. It is admitted that, except in certain cases, husband and wife could not, at common law, testify for or against each other; but this case depends upon the construction to be placed upon several provisions of the Code. So far as his individual interest was involved, he was clearly competent; the property having been sold under execution against him, for his own debts. The Code (§ 2302) provides, that no objection must be allowed

to the competency of a witness, "because he is interested in the event of the suit, or liable for costs, unless the verdict and judgment would be evidence for him in another suit;" and there is certainly no ground for saying that the record could be offered as evidence for or against him in another suit. In answer to the objection that the incompetency is founded on public policy, it is urged that the provisions of the Code, unless the law itself must yield to policy, materially change the policy of our law. The policy of the common law was founded on the idea, now obsolete, that husband and wife, so far as interest was concerned, constituted but one person; that there was unity of thought and feeling, of purpose and action; and that there was one purse in common, which the husband, as the governing head of the family, should use and control. But all this, in many important particulars, is now changed. The wife now has a separate estate, and consequently a separate interest. In relation to her separate estate, of which the husband is by law made the trustee, he occupies the position of an agent who has the right to manage the property of his principal, and to receive the profits as compensation for his services. In respect to matters connected with his agency, he should be allowed to testify, on the same principle which renders any agent a competent witness for his principal; that is, from the very necessity of the case. The facts to which he was here offered, were within his personal knowledge, and could only be certainly known to him. To refuse to allow him to testify, in such case, will place the wife's estate at the mercy of the husband's creditors, and, in a great measure, defeat the protection which the law intended to throw around it.

2. The charge of the court cannot be sustained. It makes the wife's property liable to the husband's debts, because he voluntarily did the very thing which good faith, as well as the express letter of the law, required at his hands, and which a court of equity would have compelled him to do.

WALKER, J.—The incompetency of husband and wife to testify for or against each other, unless in a few excepted instances, has its foundation not merely in the identity of their legal rights, but in a wise public policy. No abandon-

ment, or intention to abandon that policy, is indicated by the statutes securing to married women their property separately from their husbands. There is nothing in those statutes from which we can infer a legislative purpose to mar the sacred confidence of married life, and to open the door for broils and dissension, by permitting husband and wife to testify for or against each other. · That the rule which renders the husband and wife incompetent witnesses for or against each other is abolished, cannot result from the severing of their pecuniary interests to a certain extent, because the rule was not founded merely upon the identity of those interests.

In 2 Bright on Husband and Wife, page 42, it is said, that the wife is a competent witness in a suit to which the husband is a party, " when, from the nature of the inquiry, the nature of the information to be expected is *peculiarly* within the knowledge of the wife, and when to exclude such evidence would occasion insecurity to that relation in society, which it is the object of the rule to protect." Under this rule, the competency of the wife to testify against one charged with her forcible abduction and marriage, or against her husband for injuries to her person, and in the like cases, is admitted; but it is susceptible of no construction favorable to the competency of the husband to testify for the wife in such a case as this.

In some cases, an agent is a competent witness, notwithstanding his interest in the event of the suit, from the necessity of the case.—Bean v. Pearsall, 12 Ala. 592. But this exception to the general rule "should never be allowed, in a cause which involves the fraud, negligence, or tortious act of the agent."—Griggs v. Woodruff, 14 Ala. 13. In this case, the question, whether the husband has made a fraudulent transfer to his wife, is involved; and therefore, conceding that there is an analogy between the objection to competency for interest, and for the marriage relation existing between the witness and the party, the husband would not be a competent witness in this case. We prefer, however, to place our decision upon the ground, that the husband and wife are incompetent to testify for or against each other upon principles of public policy; and that incompetency applies, where the husband is called upon to testify as to his acts in the capa-

city of trustee for his wife. The law has never made any exception to the general incompetency of the husband to testify for the wife, because the subject of the testimony was his acts as trustee ; and we do not think there is anything in our laws which demands the creation of a new rule. We decide, in this case, that the husband was incompetent to testify as a witness.

If the husband, holding the funds of his wife, not consisting of the income or profits of the wife's separate estate, should purchase property with those funds, and take the title in his own name, the law would compel him, at the instance of the wife, to convey the property to her. If he should make such a conveyance voluntarily, even though it was done for the purpose of keeping his creditors from taking the property in payment of his debts, his conveyance will be sustained, because he must be regarded as having well done that which the law would have compelled him to do.—Elliott and others v. Horn, 10 Ala. 348.

The charge of the court was inconsistent with the law thus laid down; and for that reason, the cause is reversed and remanded.