Gholson, J.
The first error assigned, is the admission, as evi•dence, of the declarations of Robert T. Hueston. These declarations were received as those of a person since deceased, and against his interest at the time they were made. The ground upon which such •evidence is received, it has been said, “ is the extreme improbability of its falsehood. The regard which men usually pay to their own interest is deemed a sufficient security, both that the declarations were not made under any mistake of fact, or want of information •on the part of the declarant, if he had the requisite means of knowledge, and that the matter declared is true.” 1 Greenl. Ev., -sec. 148.
It might be inferred from this statement, that the fact must have •become known, the information acquired, or the knowledge obtained, when the party had such an interest as would induce accuracy and care in ascertaining the truth. If this be required, the declarations should not have been received in this case, for the party wbo made the declarations, though then interested, had no pecuniary interest (which the authorities show to be indispensable) *at the time the. matters occurred to which the declarations related. In any view, however, it appears that “the only declarations of deceased persons receivable in evidence, are those made .against the proprietary or pecuniary interests of the party making them, when the subject-matter of such declarations is within the peculiar knowledge of the party so making them.” The Sussex Peerage case, 11 Cl. & Fin. 85-112; Gleadow v. Atkin, 1 Crompt. & Meeson, 410.
Now, we do not think that within the true meaning of the rule, the transactions which the declarations were offered to establish could be said to be within the peculiar knowledge of the person making the declarations. The action was brought by Ralph Hues-ton to recover, of the administrator of Matthew Hueston, for services rendered to the intestate in his lifetime. The declarations were offered to show that “ said services were rendered for and at the request of said intestate.” The person whose declarations were offered, was shown to be the son of the intestate, his attorney at law and agent, and intimately acquainted with his business. But this does not show any peculiar knowledge of the subject-matter *346 of the declarations on the part of the person making them, or that it was his duty to know. We suppose the rule requires that it. should appear that the person had competent knowledge, that is, was cognizant of the fact, or that it was his duty to know. If he were not so situated as to make it his duty to know, an inference-that he might have known, or very probably would have known, will not suffice. There must be enough to create a presumption' that he did in fact have knowledge. The proof offered in this case fails to show that the particular transaction of the employment of Ralph Hueston by the intestate was under the immediate supervision and direction of Robert T. Hueston, or that it was his duty to-take cognizance of that transaction.
The foundation for the admission of the declaration *thus-failing, we need not proceed with an inquiry as to their form— whether the rule-only extends to written entries or memoranda, or also embraces parol declarations. This appears to be an unsettled question (2 Smith’s Lead. Cas. 343-347; Stapylton v. Clough, 2 E. & B. 933; Fursdon v. Clogg, 10 M. & W. 572; Lawrence v. Kimball, 1 Met. 524-527), and we forbear to express any opinion.
It is also alleged as error that the court improperly rejected the-deposition of Robert Harper, on account of the interest of his wife-in the result of the suit. It is claimed that the rule that husband and wife shall be incompetent to testify for or against each other, the question of interest being out of the way, only ajplies whore-the husband or wife is a party in the action. But we think the rule is not a technical one, depending upon the form of the proceeding, and equally applies, whether the husband or wife be the-party on the record, or be interested in the event of the suit. It is th'e policy of the -law, in order to insure conjugal confidence, that in no case shall husband and wife be allowed to give evidence for or against each other. O’Conner v. Majoribanks, 4 M. & G. 435; Wilson v. Sheppard, 28 Ala. 623. In a recent case in New York, very analogous to the present, after a full review, of the authorities bearing upon the question, it is said: “ Upon them all it is entirely clear that the rule of exclusion of husband or wife, where the other is a party or interested in the event, depends merely upon the existence of the relation, and not at all upon the existence in the party offered a's a witness, of an interest in the event, independent of that which the law may attribute to him by reason of the marriage relation.” Hasbrouck v. Vandervoort, 5 Seld. 153-160. It *347 is nob material to consider whether the rule be one of policy, independent of the question of interest, or, as stated in an elementary work, be “ founded partly on the identity of their legal rights and interests, and partly on principles of public policy.” 1 Grecnl. Ev., sec. 334. If it does not rest solely on the ground of interest, *it still applies in full force, notwithstanding the removal of the disability upon that ground. 5 Seld. 157.
The last error assigned requires the construction of an instrument purporting to be a receipt of release. It is claimed on the-one side that the instrument is both a receipt and a contract, and may be divided, and the part purporting to be a receipt contradicted by parol evidence. O.n the other side, it is claimed that the whole writing stands upon the same consideration, and constitutes an entire contract.
The defendant in error claims that the writing will bear transposition, and the receipt in full be disconnected from the other1 matters referred to in the writing. We do not thirfk a fair construction will permit this to be done. A connection is shown both from the language and the character of the matters specially mentioned, and the result would appear to be, a contract of settlement between the parties, embracing all claims of the party executing it against the party to whom the instrument was delivered. It is unreasonable to suppose that Ralph Hueston, had he retained so considerable a claim as the one now sued for, would have transferred the-note for $500. It is equally unreasonable to suppose that Matthew Hueston would give up the notes and accounts he held against Ralph Hueston, if such an account against him was retained. It is a question of construction upon the particular instrument, and' we think it contains the terms of a contract, which parol evidence can not be permitted to contradict. The instruction asked of the court upon this point should therefore have been given.
It is urged that the court, substantially, left the question to the-jury whether the receipt was executed under a mistake,1 and that this was all that the plaintiff in error could properly claim. We-do not think that this cured the error in the refusal of the charge as asked, or was, substantially, giving that charge. The court expressly charged the jury that the instrument was to be regarded as in part a ^receipt, and in part an agreement, and that the first part was only a receipt, and might be limited by parol evidence. In this we think there was error, and not holding that the» *348 •instrument was a receipt, but rather a contract of settlement and release between the parties, we need not inquire into the difference 'between receipts in full and ordinary receipts.
For the errors which have been pointed out, the judgment must .be reversed.
Brinkerhorr, C. J., and Sutlirr, and Peck, JJ., concurred. Scott, J., did not sit in this case.