## COLLINS vs. MACK.

1. STATUTE OF LIMITATIONS:

In an action at law, the statute of limitations cannot be availed of by demurrer, but must be pleaded in bar, unless the complaint show that a sufficient time has elapsed to bar the cause of action, and, also, the nonexistence of any ground of avoidance.

2. EVIDENCE: *Competency of husband and wife.*

The exclusion, at common law, of the husband and wife as witnesses, for or against each other, was based on grounds of public policy, for the protection of the marital relation. Secs. 2480-1-2-3, etc., Gantt's Digest, excluding husband and wife from testifying for or against each other, is not in conflict with the provisions of the Constitution of 1874, prohibiting any exclusion on the ground of interest, etc.; and it was error to permit the husband, in a suit by the wife for breach of a promise of marriage, to testify as to matters that occurred previous to the marriage.

(The case of *Magness* v. *Walker*, 26 Ark., 470, reviewed and qualified.)

3. EVIDENCE: *Competency of admissions to a physician.*

The admissions of a patient to a physician, while the latter was in attendance during her illness, and which were not necessary to enable him to prescribe for her, or do any act as a surgeon, may be proven by the physician.

4. ———: *Admissions.*

Where a party to a suit becomes a witness, it is not necessary to lay the usual foundation for proving previous admissions, contradictory to the party's testimony.

5. MEASURE OF DAMAGES: *In an action for breach of promise of marriage.*

An action for breach of a promise of marriage, embraces the injury to the feelings and affections, as well as the loss of marriage; and the jury, in estimating the damages, may take into consideration all the circumstances of the case.

6. ———.

The measure of damage, in an action for breach of a promise to marry, is not to be measured by the wealth of the defendant; though evidence of his rank and wealth may be pertinent to the issue, as illustrating the injury sustained by the plaintiff by loss of the marriage.

APPEAL from *Lincoln* Circuit Court.

Hon. JOHN A. WILLIAMS, Circuit Judge.

*Pindalls,* for appellant.

*Carroll & Jones* and *B. C. Brown, contra.*

ENGLISH, CH. J.:

This was an action for breach of promise of marriage, brought by Sallie E. Mack, against John Collins, in the Lincoln Circuit Court.

The defendant demurred to the complaint, on the grounds:

" *First*—Because the same does not state facts sufficient to constitute a cause of action.

" *Second*—Because plaintiff's cause of action is barred by limitation."

The court overruled the demurrer, and the defendant filed an answer of three paragraphs:

*First*—Denying that he ever promised to marry the plaintiff.

*Second*—That the plaintiff's cause of action accrued more than three years before the commencement of the suit.

*Third*—A general demurrer.

The court overruled the demurrer; the issues were submitted to a jury; verdict and judgment in favor of plaintiff for $5,000.

Motion for new trial overruled; bill of exceptions, and appeal by defendant.

*First*—As to the demurrer to the complaint:

The counsel for appellant submit that there are two counts in the complaint, one for breach of promise of marriage, and the other for seduction, and that both counts are bad, the first because it avers a promise of marriage, but alleges no breach of the promise, and the second because appellee could not sue for her own seduction.

It is true that the complaint, as it appears in the transcript, is divided into two paragraphs, such as are usual in literary composition, but they are not numbered Code fashion; and looking at the whole complaint, we think the pleader intended to set forth but one cause of action, that of breach of promise of marriage, and that the seduction, superinduced by means of the promise of marriage, was alleged as matter of aggravation.

So the counsel of appellant below must have understood the complaint, for, in his answer, he denied the alleged promise of marriage, but did not deny the seduction.

In an action at law the statute of limitations cannot be availed of by demurrer to the complaint, but must be pleaded in bar, unless the plaintiff should be foolish enough not only to show, upon the face of his complaint, that a sufficient time had elapsed to bar his cause of action, but, also, the non-existence of any ground of avoidance, which was not done in this case; *Rankin* v. *Turney*, 2 Bush, 555; *Hieronymous* v. *Mayhall*, 1 id., 508.

*Second*—As to the competency of the husband to be a witness for the wife in a civil action by her:

On the trial, the appellee introduced her husband (Joseph Mack) as a witness in her behalf, and the court permitted him to testify against the objection of the appellant, and this is made the second ground of the motion for a new trial.

It seems that after appellee was delivered of a child, of which appellant was the father, and after he had married another woman, she intermarried with Joseph Mack, but did not join him with her as plaintiff in this action against appellant for the breach of the alleged promise of marriage made by him to her while sole.

Mack testified as follows: " I am the husband of plaintiff; I went to work for John Collins (defendant) in November, 1871, helping him to build a levee ; I quit working for him in February, 1872, when we were running the line of the levee ; I told John Collins that a young man by the name of Thornton was sparking Miss Sallie (plaintiff) on last Sunday, and that I thought he liked her, and was going to marry her. John said, ' No, that fellow will not marry her, for Sallie and I are engaged.' I then said, ' I think if you and Sallie are engaged, you will get her instead of the other fellow, because I think she likes you better than she does him.' I once saw John put his arms around Miss Sallie, and they fell down in the scuffle, and Mrs. Weaver (who was present) said, ' My God ! did you ever see two such peoples ?' "

The object of this testimony was to prove the alleged promise of marriage, which appellee, who had been previously examined, proved directly.

The matter proven by the witness was material to the issue, and came to his knowledge before his marriage with appellee.

By the Constitution of 1868: " In the courts of this State there shall be no exclusion of any witness in civil actions because

he is a party to, or interested in, the issue to be tried," etc.; Art. 7, sec. 22.

In the *schedule* to the Constitution of 1874, this provision is continued in force (subject to legislative repeal or amendment), in these words: "In civil actions, no witness shall be excluded because he is a party to the suit, or interested in the issue to be tried," etc.; sec. 2.

By sec. 662 of the Civil Code, enacted after the adoption of the Constitution of 1868: "All persons, except those enumerated in the next section, shall be competent to testify in a civil action."

Sec. 663. The following persons shall be incompetent to testify :

"*First*—Persons convicted of a capital offense, or perjury, etc.

"*Second*—Infants under the age of ten years, etc.

"*Third*—Persons of unsound mind, etc.

"*Fourth*—Husband and wife, for or against each other, or concerning any communication made by one to the other during the marriage, whether called as a witness while that relation subsists, or afterwards." See Gantt's Digest, secs. 2480-1-2-3, etc.

In *Spivey et al.* v. *Platon, adm'r.*, 29 Ark., 606, we held that so much of the fourth clause as relates to communications made by husband and wife, one to the other, was but declaratory of a familiar and well settled common law rule of evidence.

If, by the common law, the husband and wife were incompetent to testify for or against each other, in a civil action, solely on the ground of interest, then, by the above provision of the Constitution, such disqualification was removed, and they were placed on a footing, as to competency, with other witnesses, and so much of the above statute as renders them incompetent to testify for or against each other, is in conflict with the Constitution, and void.

The husband and wife, says Mr. Kent, cannot be a witness for or against each other in a civil suit. This is a settled principle of law and equity, and it is founded as well on the interest of the parties being the same, as on public policy. The foundations of society would be shaken, according to the strong language in one of the cases, by permitting it. 2 Com., 178.

The rule by which parties are excluded from being witnesses for themselves, says Mr. Greenleaf, applies to the case of husband and wife; neither of them being admissible as a witness in a cause in which the other is a party. The exclusion is founded partly on the identity of their legal rights and interests, and partly on principles of public policy, which lie at the basis of civil society. For it is essential to the happiness of social life, that the confidence subsisting between husband and wife should be sacredly protected and cherished in its most unlimited extent; and to break down or impair the great principles which protect the sanctities of that relation would be to destroy the solace of human existence. 1 Greenlf. Ev., sec. 334.

It makes no difference at what time the relation of husband and wife commenced; the principle of exclusion being applied in its full extent, whenever the interests of either of them are directly concerned. Id., sec. 336.

Nor is there any difference, in principle, between the admissibility of the husband and that of the wife, when the other is a party. Id.

In *Davis* v. *Dinwoody*, 4 Durnford & East, 678, where the sheriff was sued for selling the separate goods of the wife, under an execution against the husband, and the husband was called as a witness to identify the goods, it was objected to his competency, that he was interested, to which it was answered that he came to speak against his interest, etc. Lord Kenyon, Ch. J., said; "Independently of the question of interest, husbands and

wives are not admitted as witnesses, either for or against each other; from their being so nearly connected, they are supposed to have such a bias upon their minds that they are not to be permitted to give evidence either for or against each other."

And Butler, J., said: "It is now considered as a settled principle of law, that husbands and wives cannot, in any case, be admitted as witnesses, either for or against each other."

And in *Wyndham* v. *Cheatwynd*, 1 Burrow, 424, Lord Mansfield said: "In the matter of evidence, husband and wife are considered as one, and cannot be witnesses, the one for the other. The husband cannot be witness for his wife in a question touching her separate estate."

In *The People* v. *Mercein*, 8 Paige, 49, Chancellor Walworth said, the rule which excludes the wife from being a witness for or against her husband, is founded upon a principle of public policy. And Mr. Tyler, after quoting the remarks of the chancellor, in that case, said: "This was said with respect to the testimony of the wife for or against her husband, and the rule is as sacred with respect to the testimony of the husband for or against the wife." Tyler on Inf. and Cov., pp. 321–2.

Mr. Cord says: "The best reason for not allowing a husband or wife to be witnesses against each other is, that if a wife were a witness for her husband, she would be under a strong temptation to commit perjury; and if against her husband, it would be contrary to the policy of marriage, and might create much domestic dissension. So vice versa of the husband."

"The husband is an incompetent witness for the wife, where her separate estate is concerned." Cord's Legal and Equitable Rights of Married Women, secs. 1032–3.

Mr. Reeve says: "It is a rule of law, that husband and wife cannot be witnesses for, or against each other. * * * The principle of this rule, arises from the anxious solicitude, which

the law discovers, to preserve domestic tranquility. It cannot be supported on the ground of interest in the suit; for the wife has no property that can be affected by the suit. She is not then, interested in it. It is highly probable, that she is anxious respecting the event of the suit. So a father is anxious, in the case of a child; but the interest which excludes, must be a direct pecuniary interest.

In ordinary cases, any person may be a witness in his own cause, or in one in which he is interested, if the opposite party consents to it; but in the case of husband and wife, if the husband, wife, and their antagonist all agree that the wife may be a witness, the law interferes, and prevents it. This shows that it is not because the wife is interested, that she is prevented from being a witness; for the right of the opposite party to object to an interested witness, may be waived; but to suffer such waiver, in the case of a husband and wife, has a tendency to disturb that domestic tranquility, which is so desirable; and therefore, the law forbids it." Reeve's Domestic Relations, 188-9.

In *Wilson* v. *Sheppard*, 28 Ala., 623, a married woman brought suit, for the conversion of personal property, claimed by her as part of her separate estate, and called her husband as a witness—Held, that he was incompetent."

By the Code of Alabama, no objection can be allowed to the competency of a witness, "because he is *interested* in the event of a suit, or liable for costs, unless the verdict and judgment would be evidence for him in another suit.

The court said: "The incompetency of husband and wife, to testify for or against each other, unless in a few exceptional instances, has its foundation, not merely in the identity of their legal rights, but in a wise public policy.

So in *McDuffie* v. *Greenway*, 24 Texas, 625, where the separate goods of the wife were levied on under an execution against the

husband, and claimed by the wife, the husband was called as a witness for her. The court said: "The husband was not a competent witness for the wife, for although his pecuniary interest in the suit might be adverse to her's, it is a rule founded in sound policy, that the husband cannot, in such a case, be a witness either for or against the wife."

By the Code of New York, "No person offered as a witness, shall be excluded by reason of his *interest* in the event of the action."

In *White* v. *Stafford*, 38 Barbour, 420, the plaintiff called his wife as a witness.

The court said. "This provision (the statute above copied) annihilates, at a blow, every objection to the admissibility of witnesses, on the ground of pecuniary interest. So far, therefore, as the rule excluding husband and wife, may. be supposed to stand on that ground, it is overthrown by this section; but, as we have seen by the preceding citations, the rule of exclusion is based upon the broader and higher ground of public policy. It is obvious that section 398 of the Code (copied above) was only intended to remove the disability of pecuniary interest, and not to affect other grounds of exclusion. But it is not necessary to pursue this point, for in the case of *Hasbrouck* v. *Vandervoort*, 5 Selden, 153, the Court of Appeals have distinctly adjudicated, that this section did not affect the rule under consideration."

See also *Smith* v. *Railroad*, 44 New Hamp., 334; 1 Dillon R., 66, note; *Funkhouser and wife* v. *Pogue*, 13 Ark., 295.

We conclude, therefore, that the provision of our statute, above copied, which declares, that husband and wife shall be incompetent to testify for, or against each other in civil actions, is not in conflict with the provision of the Constitution, which declares that: "In civil actions, no witness shall be excluded because he is a party to the suit, or interested in the issue to be

tried," and that the court below erred in permitting the appellee to introduce her husband to testify as a witness in her behalf.

In coming to this conclusion, we have not overlooked the remarks of Mr. Justice Gregg in *Magness* v. *Walker*, 26 Ark., 470.

That suit was for rent by Magness against Walker, on a contract made by the wife of Magness as his agent, and when he was absent in Texas, with Walker. Walker was sworn as a witness for himself, and gave his version of the contract. Magness having been absent when the contract was made, and having no personal knowledge of it, offered his wife as a witness, who made the contract as his agent, and she was excluded by the court below. This court held that she was admissible under the circumstances; and there are some authorities which sustain this ruling, on the ground of necessity, and to prevent a failure of justice. Mr. Justice Gregg, however, undertook to construe the clause of the Constitution of 1868, which we have been considering, but did not notice the statute on the subject, and his remarks, beyond the precise question then before the court, must be regarded as *obiter dictum*.

*Third*—As to admissions, etc.:

Appellant called as a witness Dr. Joshua Henly, who testified that he was a practicing physician, and was called to attend appellee in her confinement at the time she was delivered of the child spoken of by her in her testimony.

Appellant offered to prove by this witness that during said visit and attendance, and about six hours after she was delivered of her child, appellee told witness that she and appellant never had been engaged, and that he never had promised to marry her. Upon the objection of appellee, the court excluded this evidence, but upon what ground, does not appear in the transcript.

Not, surely, on the ground that the admission was a confidential communication to the witness, necessary to enable him to

prescribe for appellee as a physician, or to do any act for her as a surgeon, (Gantt's Digest, sec. 2485,) for her statement to him was not of that character.

Nor do we think that the admission could properly have been excluded on the ground that appellee had not, while on the stand as a witness, been asked if she had made such admission.

She sustained two relations to the suit: First, as plaintiff; second, as a witness in her own behalf. By becoming a witness, she did not lose her character as plaintiff.

The acts and declarations of a party to a suit, when they afford any presumption against him, may be proven by the opposing party. *Phelan* v. *Bonham,* 9 Ark., 389.

Appellee had stated, on her examination, that appellant had promised to marry her. Had she been a witness in the cause only, and not a party, appellant could not have discredited her, by proving that she had made a contrary statement on some former occasion, without first interrogating her as to such former statement. *Drennen* v. *Lindsey,* 15 Ark., 359.

By making herself a witness in her own behalf, appellee could not cut off, or impair, the full right of the appellant to prove her admissions or declarations as a party. Had the proposed evidence of her admission been admitted, she could have been recalled and examined by her counsel in regard to it.

Appellant, however, was hardly prejudiced by the exclusion of Dr. Henly's testimony, because, before he was introduced, appellant had proven, by four other witnesses, that appellee had made similar admissions to them, on other occasions.

*Fourth*—As to instructions given for appellee:

The court gave five instructions to the jury, for appellee, to which appellant objected:

" *First*—This is an action for a breach of promise of marriage, and if the jury are satisfied, from the testimony, that such a

contract was made, and was broken without just cause, they can fix the damages in any sum not exceeding five thousand dollars, (the amount claimed in the complaint).

"*Second*—If the jury believe, from the sworn evidence of the witnesses, that the defendant, within three years next before the commencement of this suit, promised to marry plaintiff, and that after said promise, defendant married another person, without just cause, they may find for plaintiff, in any sum not exceeding five thousand dollars..

"*Third*—If the jury find for plaintiff, they may award her actual damages, and such further damages as they may deem right, as a compensation for lacerated feelings, and indignity to which she was subjected by the defendant's failing to fulfill his promise of marriage.

"*Fourth*—If the jury find for plaintiff, they may assess the damages at a sum commensurate with the injury resulting from. the breach of the marriage contract, and they may take into consideration all the circumstances of the case.

"*Fifth*—If the jury believe, from the evidence, that defendant promised to marry plaintiff, and that such promise was within three years next before the commencement of this suit, and that plaintiff was ready and willing and offered to marry him, and he refused so to marry plaintiff, without just cause, and that plaintiff has been damaged thereby five thousand dollars, they will so find."

The court also instructed the jury, of its own motion, that in making up their verdict they would not take into consideration the question of seduction. But of this the appellant does not complain.

The criticism of the counsel for appellant upon the five instructions given for appellee, points out verbal, rather than substantial, faults.

The action for breach of promise of marriage, says Mr. Sedgwick, "though in form *ex contractu*, yet, it being impossible, from the nature of the case, to fix any rule or measure of damages, the jury are allowed to take into their consideration all the circumstances; and, provided their conduct is not marked by prejudice, passion, or corruption, they are permitted to exercise an absolute discretion over the amount of compensation. The damages in this action, says the Supreme Court of New York (*Southard* v. *Rexford*, 6 Cowen, 254), vest in the sound discretion of the jury, and the circumstances of each particular case." Sedgwick on Damages (6th ed.), p. 248.

Again, he says: "The action for breach of promise of marriage, as has been already said, though nominally an action founded on the breach of agreement, presents a striking exception to the general rules which govern contracts. This action is given as an indemnity, to the injured party, for the loss she has sustained, and has been always held to embrace the injury to the feelings, affections, and wounded pride, as well as the loss of marriage. From the nature of the case, it has been found impossible to fix the amount of compensation by any precise rule; and, as in tort, the measure of damages is a question for the sound discretion of the jury in each particular instance, subject, of course, to the general restriction, that a verdict influenced by prejudice, passion, or corruption, will not be allowed to stand.

"Beyond this, the power of the court is limited, as in cases of tort, almost exclusively to questions arising on the admissibility of evidence, where offered by way of enhancing or mitigating damages. So where it appears that the promise was made by the defendant with a view to seduce the plaintiff, and that the defendant thereby did, in fact, seduce the plaintiff, this will be allowed to go to the jury in aggravation." Id., pp. 455-6, and notes.

If Mr. Sedgwick had presided at the trial of this cause, instead of his Honor Judge Williams, and had read to the jury the passages from his work on the measure of damages, which we have copied above, the appellant would have had more cause to complain than he has of the charge of the presiding judge ; for the appellee swore that it was by means of the promise of marriage that appellant induced her to yield to his solicitations for sexual intercourse ; yet the presiding judge told the jury that in making up their verdict they would not take into consideration the question of seduction. It is probable, however, that the jury disregarded this charge of the judge, as they gave to appellee the full measure of damage claimed in her complaint.

See *Goodall* v. *Lavina Thurman*, 1 Head. (Tenn.), 209.

*Fifth*—As to appellant's instructions :

Appellant asked eight instructions, and the court gave all of them except the fifth and eighth, which were refused, and are as follows:

" *Fifth*—To entitle the plaintiff to recover damages, it must appear that she was damaged by the breach of promise ; and the plaintiff must prove the amount she has lost by such breach of promise, by showing the amount of defendant's property, and his standing in society at the time the alleged breach of promise occurred ; and if the plaintiff fails to prove that the defendant owned or possessed property of value, the presumption is in favor of defendant that the plaintiff lost nothing in property by the alleged breach.

" *Eighth*—If the jury find, from the evidence, that plaintiff has, since the alleged breach of promise and seduction, contracted a marriage, and no evidence appearing to show that such marriage is not respectable and honorable, it is a circumstance that the jury may consider as against the plaintiff as to the damage

she is alleged to have suffered by the alleged breach of promise by the defendant."

Mr. Greenleaf says : " Nor are damages to be assessed merely according to the defendant's ability to pay ; for whether the payment of the amount due to the plaintiff, as compensation for the injury, will, or will not, be convenient to the defendant, does not at all affect the question as to the extent of the injury done, which is the only question to be determined. The jury are to inquire, not what the defendant can pay, but what the plaintiff ought to receive. But, so far as the defendant's rank and influence in society, and, therefore, the extent of the injury, are increased by his wealth, evidence of the fact is pertinent to the issue." 2 Greenleaf Ev., sec. 269.

In *Goodall* v. *Lavina Thurman,* 1 Head., 216, which was an action for breach of promise to marry, the court said : " It is contended, that as the defendant was poor, it was erroneous in the court to charge, as it did, that the jury could not look, in the assessment of damages, to his ability to pay. The charge on this point was : 'That the damages to be recovered are in the sound discretion of the jury, under the circumstances surrounding the case. The jury, in assessing the damages, are to inquire, not what the defendant can pay, but what the plaintiff ought to recover. They may look to the rank and condition of the defendant!' A man's poverty certainly should not secure him from damages commensurate with the injury inflicted. It is enough that they cannot be collected when recovered. The charge would, perhaps, have been more full and accurate to have made some reference to the estate of defendant, as a matter to be looked to in the discretion of the jury, but error cannot be predicated of this omission."

Whether the appellant in this case was wealthy or poor, does not appear. Neither party thought proper to introduce any evidence on that subject.

The fifth instruction moved for appellant, and refused by the court, would seem to make the amount of defendant's property the measure of plaintiff's recovery in an action for breach of promise of marriage, and to assert that it is a presumption of law 'that the defendant is poor, unless the plaintiff proves him to be a man of property.

We have seen from the above authorities that plaintiff's damages are not to be measured by the wealth of the defendant, though evidence of his wealth and rank may be pertinent to the issue; and we are not aware that the law presumes the defendant to be poor or rich, but under the impression that it leaves the party relying for advantage upon one or the other to prove it.

Framed as it was, appellant's fifth instruction was properly refused.

The eighth instruction moved for appellant, and refused by the court, seems to assume that there was no evidence that appellee's marriage, after appellant's alleged breach of promise, etc., was not respectable and honorable, etc.

Every instruction should be hypothetical—based upon the supposition that if the jury find certain facts to be proved or disproved, then the legal consequence resulting therefrom is one way or the other. *Floyd* v. *Ricks,* 14 Ark., 287; *Bank* v. *McGuire,* id., 530; *Atkins* v. *State,* 16 Ark., 569.

Appellee, on her examination, after relating her sad story— how, in substance, she was invited to live with her aunt, appellant's mother; how he first offended her by an improper approach, their subsequent agreement of marriage, the means to which he resorted, under a promise of marriage, to induce her to yield, in the first instance, to his solicitations for intercourse, his breach of promise by marrying another woman, the birth of her child, her estimate of the damages which she had sustained, etc.,—added, that but for this, she would not have married Mack;

that she had no home or place to go to, and that he had no property, and was a laboring man.

What impression the jury had of Mack, from the fact that he had married a fallen woman, we do not know.

If the defendant, in an action for breach of promise of marriage, may show, in mitigation of damages, that plaintiff subsequently contracted an honorable and advantageous marriage, we are not persuaded that it was shown in this case.

*Sixth*—We have but little to say about the sufficiency of the evidence to sustain the verdict, or of the amount of damages assessed by the jury. There was a conflict between the testimony of appellee and appellant, as there usually is where the parties are allowed to be witnesses, but of the weight of the evidence it was the province of the jury to judge.

Appellant swore he never promised to marry appellee. He admitted that he had criminal connection with her, his own cousin, and while she was living under his mother's 'roof, and under her protection.

He laid the blame of the beginning of their illicit intercourse on appellee, but the jury may not have thought this manly, or have believed it, as, in such matters, men are usually the aggressors. He may not have made a favorable impression upon the jury by telling them that he kept up this criminal intercourse with his unfortunate cousin up to the time of, and for a few days after his marriage with another woman. His solemn marriage vows were unheeded, or soon forgotten.

But for the error of the court in admitting the testimony of the husband of appellee, we should not be inclined, upon the whole record, to disturb the verdict.

Since the cause was brought here the death of appellant has been suggested, and his administratrix substituted.

For the error above indicated, the court below should have granted a new trial.

The judgment must be reversed, and the cause remanded for a new trial. (Gantt's Dig., secs. 476–1).