# Jackson v. Clopton.

*Action by Client against Attorney, for Money Collected.*

| 66 | 29 |
| 102 | 609 |
| 66 | 29 |
| 103 | 287 |

1. *Lien of attorney on moneys collected.*—An attorney has a lien on moneys collected under a judgment which he has recovered for his client, for his reasonable fees for services rendered by him in the cause; and he is also protected in the payment, out of the funds collected by him, of like reasonable fees to associate counsel in the cause employed by the client.

2 *Employment of attorney.*—To support his claim to compensation for professional services, an attorney may prove either his original employment by the client, or the performance of services with the knowledge of the client, and the recognition of the relation by the client during the progress of the cause.

3. *Liability of attorney for negligence; damages.*—An attorney is held to the exercise of reasonable diligence and skill in the particular case in which he is employed, and is liable for ordinary neglect in the discharge of his professional services; but, in an action against him by his client, involving fees retained out of moneys collected under a judgment recovered for his client, the latter can not be allowed to prove, as an element of damages, a continuance of the cause on account of an amendment of the complaint, and a consequent loss of interest by the failure to get a judgment at that term, when "it does not appear that this was attributable to any negligence on the part of the attorney,—to say nothing of the remote and speculative nature of a claim for damages based on such a contingency."

4. *Proof of conversation with deceased person, whose estate is interested in suit.*—Under the provisions of the statute relating to the competency of parties as witnesses (Code, § 3058), a party can not be allowed to testify to a conversation with a deceased person, whose estate would be liable to refund to the adverse party in the event of a recovery.

5. *Objection to evidence offered; error without injury.*—When illegal evidence is offered, and is objected to, the overruling of the objection is error without injury, when the bill of exceptions does not show that the evidence was in fact introduced.

6. *Proposal of compromise.*—A proposal to compromise or settle a matter in controversy, coupled with a condition which is rejected, is not an admission that any thing is due, and has no effect on the legal rights of the parties.

APPEAL from the City Court of Montgomery.

Tried before the Hon. JOHN A. MINNIS.

The transcript in this case contains only the bill of exceptions reserved by the plaintiff on the trial, and the verdict and judgment. The bill of exceptions purports to set out all the evidence adduced on the trial, and shows that the action was brought by W. S. Jackson against David Clopton, to recover moneys which the defendant had collected as attorney for the plaintiff, under a judgment recovered in his favor, and which the defendant had retained as compensation for his

[Jackson v. Clopton.]

professional services in the cause, and for professional services rendered by Arrington & Graham, who also appeared in the cause as attorneys for the plaintiff. The controversy seems to have been confined to that portion of the money which was retained for Arrington & Graham, and which was paid to them by the defendant, before the commencement of this suit, on their demand, after notice that the plaintiff denied their employment by him. The judgment in favor of the plaintiff, under which the money was collected, was rendered in a suit against John W. Durr and others, as sureties on an attachment bond for Swift, Murphy & Co., who had sued out an attachment against said Jackson in the United States District Court at Montgomery; the judgment being for the full amount of the bond, nearly $12,000., When the plaintiff called on the defendant, after the collection of the money, the defendant told him that, after consultation with other attorneys, as to the amount of fees to be charged for professional services in the suit, he had determined to charge one third of the amount collected; one half of that sum being for the services of himself, or the partnership of which he was a member, and the other half for Arrington & Graham, attorneys in Montgomery. The defendant then denied that he had ever employed said Arrington & Graham, and asserted that they only represented Graham & Abercrombie, attorneys in Tuskegee, whom he had employed, and to whom he was responsible for their fee. At a subsequent interview between the plaintiff and M. D. Graham, of the firm of Arrington & Graham, as testified by the defendant, plaintiff again denied that he had employed them, and Graham asserted the contrary. At the close of that interview, or soon afterwards, the defendant proposed to pay plaintiff $457, making the full amount paid him $8,000; and did pay him $100 of the sum, and forwarded a check for $357, to be delivered to him on his signing a receipt in full, which the plaintiff refused to do; but, as to the details of this proposal, the testimony of the parties was conflicting. It was proved that the names of Arrington & Graham were entered on the docket as attorneys for the plaintiff in the action on the attachment bond; that they appeared for him in the cause, and rendered professional services for him, the reasonable value of which was proved; and that Graham & Abercrombie, or one of them, also appeared for the plaintiff, but not at the trial term. Both the partners composing the firm of Graham & Abercrombie testified that they never employed Arrington & Graham to represent them in the cause.

The plaintiff reserved, during the trial, several exceptions to the rulings of the court on questions of evidence, of which

[Jackson v. Clopton.]

it is only necessary to notice the following : Plaintiff, having testified that N. S. Graham, of Tuskegee, told him that M. D. Graham, of Montgomery, who was his brother, "would represent Graham & Abercrombie in said cause, and that he could call on them (Arrington & Graham) for any advice as such representatives, then offered to prove that, when he first consulted Arrington & Graham in said cause, through said M. D. Graham, he told said Graham, Arrington not being present, that he called on him by instructions of his brother, and as representing his brother in the case. To this evidence defendant objected, on the ground that the plaintiff could not prove a transaction with, or a statement by Graham, who was now dead. The court sustained the objection, and excluded the evidence ; to which the plaintiff excepted."

There was some evidence in reference to a criminal prosecution against one Murphy, for perjury, in the affidavit made by him in the attachment case, and that Arrington & Graham, as attorneys, prosecuted him. "Defendant offered to prove the value of the services rendered by said Arrington & Graham in the prosecution of said Murphy. To this evidence plaintiff objected, but said objection was overruled by the court, and plaintiff excepted." The bill of exceptions contains no other statement in reference to this evidence, but then continues thus : "The plaintiff proved, in rebuttal, that the suit of Jackson against Durr and others was founded on an attachment bond, and the recovery was for the full amount of the penalty ; that at a term of the court about a year before the final trial, the defendant asked and obtained leave to amend the complaint, said amendment being necessary to include a claim for certain damages omitted in the original complaint, and, in consequence of this amendment, the cause was continued ; and, for the purpose of showing the damages which he had sustained by the delay of the cause in consequence of said amendment, he offered to prove the amount of interest which would have accrued on the judgment, if it had been recovered at the term of said continuance, down to the time at which it was really rendered. To this proof as to interest the defendant objected, and the court sustained the objection ; to which the plaintiff excepted."

On all the evidence adduced, the court charged the jury, on the request of the defendant, as follows :

" 1. In considering the question whether the defendant employed Arrington & Graham in the suit against Durr and others, the jury may look at the evidence as to the declaration of said M. D. Graham, that he had been employed by Jackson himself ; and also to the testimony of said N. S. Gra-

[Jackson v. Clopton.]

ham and R. H. Abercrombie, as to the employment by them of said Arrington & Graham; and also to the evidence that Graham & Abercrombie resided at Tuskegee, and that said N. S. Graham did not attend to the case at Montgomery; and also to the testimony of said R. H. Abercrombie, that he was prevented from attending to the case by conflicting engagements; and also to the testimony of the defendant, to the effect that he was so pressed by business engagements that he could not find time to advise with plaintiff about the case, of which plaintiff complained, in connection with the evidence as to the eloquence and ability of said M. D. Graham as a lawyer, and all the other evidence in the case, to ascertain whether defendant (?) had a motive in the employment of Arrington & Graham.

"2. If the jury believe, from the evidence, that Arrington & Graham were entered on the records of the court as attorneys for the plaintiff, and rendered services, and that they were entitled to be paid for their services in the suit on the attachment bond; then Arrington & Graham had a lien upon the money recovered in that suit, for their reasonable fees; and if the defendant, with notice of this fact, had paid over the amount to the plaintiff, without the consent of Arrington & Graham, he would have been liable to them for the amount of their fees.

"3. If the jury believe, from the evidence, that Graham & Abercrombie did not employ Arrington & Graham to represent the plaintiff in the suit against Durr and others, for them (said Graham & Abercrombie), and in their place; and that Arrington & Graham did appear as attorneys of record in said suit; and that said M. D. Graham (of the firm of Arrington & Graham) did render valuable services in said suit; and that plaintiff frequently consulted with him about said suit, and accepted such services; then plaintiff was bound to pay Arrington & Graham a reasonable fee for such services in said suit.

"4. If the jury believe, from the evidence, that upon plaintiff's saying to defendant that he ought to consider that the case was continued, on account of an amendment of the complaint, for some time, defendant replied that, if Col. (M. D.) Graham was willing, he (defendant) would reduce the fee so as to let plaintiff get $8,000 of the amount collected; and that this was done as a settlement, as to the amount of the fee to be paid; and when the defendant saw Col. Graham, and he did not then consent; and defendant afterwards voluntarily offered to give plaintiff a check for the balance ($357), but plaintiff refused to receive it as such settlement, and to receipt accordingly; and that defendant then sent a check

[Jackson v. Clopton.]

for that amount, to be delivered to the plaintiff, which the plaintiff declined to receive in that way ; and if the jury further find, from the evidence, that the defendant and Graham were entitled to a fee for their services, and the amount retained, including said $357, was not more than a reasonable fee ; then the plaintiff is not entitled to recover said $357.

"5. If the jury believe, from the evidence, that when defendant paid plaintiff, in June, 1878, the amount shown to have been then paid, upon plaintiff's saying that the cause was continued on account of an amendment of the complaint, defendant proposed that he would retain $457, and, if Col. Graham was willing, would pay it to the plaintiff; and that Col. Graham did not consent to this ; and that defendant afterwards voluntarily paid, to the order of plaintiff, $100 of said $457 ; and that afterwards, upon a controversy between plaintiff and Col. Graham, without any settlement of that controversy, defendant voluntarily sent plaintiff a check for $357, the balance of said $457, which plaintiff would not accept, except upon giving a particular kind of receipt ; and the jury find, from the evidence, that only a reasonable fee was retained, including said $357 ; then defendant is not bound to pay plaintiff said sum of $357."

The plaintiff excepted to each of these charges, as given ; and he now assigns them as error, together with the several rulings of the court on the evidence, to which exceptions were reserved as above stated.

BREWER & BREWER, for appellant.

TROY & TOMPKINS, contra.

SOMERVILLE, J.—It is settled in this State, that an attorney-at-law has a *lien* on a judgment, for any reasonable fees due to him by his client, for professional services rendered in its recovery. It is limited, however, to services rendered in the particular action, or proceeding, in which the judgment was obtained.— *Warfield v. Campbell*, 38 Ala. 527 ; *Ex parte Lehman, Durr & Co.*, 59 Ala. 631 ; *Adams v. Fox*, 40 Barb. (N. Y.) 442 ; *Wells v. Hatch*, 43 N. H. 246 ; *Mansfield v. Dorland*, 2 Cal. 507. And he may not only deduct his reasonable fees from moneys in his hands which he has recovered for his client, but is protected in the payment of like reasonable fees to other attorneys or counsel, who were employed in the same suit by the client. The reason is, that they have jointly a lien on the fund collected under the judgment, which embraces a right to have their fees satisfied out of it, where no intervening equities accrue in favor of third

parties to defeat such lien.—*Balsbaugh v. Frazer*, 19 Penn. St. 95 ; *Christy v. Douglass*, Wright (Ohio), 485.

To support his claim for professional services, an attorney-at-law may either prove his retainer, or original employment, or he may show the performance of the services within the knowledge of the client, and the recognition of the relationship by the client during the progress of the cause.—*Hotchkiss v. Le Roy*, 9 John. N. Y. 142 ; *Burghart v. Gardner*, 3 Barb. N. Y. 64 , *Fore v. Chandler*, 24 Tex. 146.

In this case, the defendant had a lien on the fund in his hands, collected under the judgment recovered by him for plaintiff, against Durr and others, for such reasonable fees as were due for professional services rendered by himself, or his law-firm, in obtaining such judgment. And if the firm of Arrington & Graham were also retained by Jackson,—a controverted question of fact, which was properly submitted to the jury,—they were entitled to a like lien for their reasonable fees. If the defendant, with a knowledge of this lien, had paid over the money to Jackson, there are circumstances under which he would have been liable for any loss occasioned thereby to his associate counsel.

An attorney-at-law is held to the exercise of reasonable diligence and skill, and is liable for ordinary neglect in the discharge of his professional services ; and the skill required is to be measured with reference to the particular duty which he undertakes to perform.—*Goodman v. Walker*, 30 Ala. 482 ; *O'Barr v. Alexander*, 37 Ga. 195 ; *Wilson v. Russ*, 20 Me. 421 ; *Parker v. Ralls*, 28 Eng. L. & Eq. 424.

There was no error in excluding the evidence offered by plaintiff, of the continuance of his original suit against Durr and others, occasioned by the necessity of an amendment to the complaint. It does not appear that this was attributable to any negligence on the part of the attorneys,—to say nothing of the remote and speculative nature of a claim for damages based on such a contingency.

The court properly excluded the testimony of Jackson, as to the conversation between him and Graham, who was deceased at the time of the trial. The estate of Graham was interested in the result of the trial, because liable to refund to Clopton in the event of a recovery from the latter by Jackson. Under the provisions of section 3058 of the Code of 1876, which, it is noticeable, has been so amended as greatly to enlarge the scope of the former exception, it was not permissible to testify as to any transaction with or statement by Graham. The reason of this rule of exclusion, imposed by the exception, has been declared to be, that there should be no admissibility where there is no mutuality.—*Kumpe v. Coons*,

[Nunn v. Nunn.]

63 Ala. 448; 1 Whart. 466. And persons beneficially interested, though not strictly parties to a suit, have been held to come within the reason and operation of the statute.—*Drew v. Simmons*, 58 Ala. 463.

The bill of exceptions recites, that the defendant offered to prove the value of the services rendered by Arrington & Graham, in the prosecution of one Murphy; they have been employed by Jackson, and said prosecution being connected in some way or another with the transactions between plaintiff and Durr. To this the plaintiff objected, and the court overruled the objection. Conceding that this evidence was inadmissible, the ruling of the court would be error without injury, as it does not appear from the record that the value of such services was ever proved in the progress of the trial, or that any evidence was introduced touching the matter. The assignment of error, furthermore, does not cover the objection.

Where one party makes a proposition to settle a matter in controversy with another, on a condition specified, and it is rejected, because of a refusal to accept the condition, the rights of the parties remain unaffected, and they are legally placed in *statu quo*. The offer of the defendant to pay the plaintiff the sum of three hundred and fifty-seven dollars, being made with the view of a compromise, and the condition of receiving it in full payment of the judgment being rejected, it can no longer have any bearing on the case; nor is it to be taken as a confession that anything is due, being regarded, in the eye of the law, as a mere overture of pacification between litigants.—1 Greenl. Ev. § 192.

The rulings of the court were in accordance with these principles, and its judgment is affirmed.

STONE, J., not sitting.