## McWilliams *v.* Jenkins.

*Bill in Equity for Specific Performance of Contract.*

1. *Chancellor's opinion and decree differing.*—When the chancellor's written opinion, accompanying his decree, goes beyond the decree, an affirmance of his decree by this court is not an affirmance of the opinion; and a repugnancy between that opinion and his second decree, rendered after the affirmance, is not available as error on a second appeal.

2. *Rescission of contract, at instance of purchaser; lien for purchase-money paid.*—In rescinding a contract for the sale of lands, at the instance of the purchaser, the court may decree a lien on the land in his favor, for the purchase-money paid; but this lien is confined to such lands, or portions thereof, as the vendor had the legal right to convey.

3. *Same; conflicting claims of purchaser, and heirs of vendor for rent.* In such case, the land being the homestead exemption of the vendor and his family, which is not liable for his contract debts, the lien in favor of the purchaser is properly declared to be subordinate to the claim of the vendor's heirs for the rents while the purchaser was in possession under the contract. (BRICKELL, C. J., dissenting.)

4. *Attorney's lien.*—The lien of an attorney at law, for his stipulated or reasonable fee, is limited to the judgment recovered in the particular case in which his services were rendered; and it does not extend to

lands, or other like property of the client, which is the subject-matter of the litigation.

APPEAL from the Chancery Court of Colbert.

Heard before the Hon. THOMAS COBBS.

This case was before this court at its December term, 1880, and is reported, under the name of *Jenkins v. Harrison*, in 66 Ala. 345–361.    The bill was filed on the 29th March, 1876, by John B. Harrison, against John S. Jenkins and others, children and heirs at law of Thomas B. Jenkins, deceased; and sought the specific performance of a contract entered into between the complainant and said decedent, for a sale or exchange of lands, as shown by the written agreement, signed by both of them, which is set out in the former report of the case; or, in the alternative, a rescission of the contract, the cancellation of a deed executed by the complainant for the property which, by the terms of the contract, he was to convey to the said Jenkins, and the declaration of a lien on the defendants' land for the money paid and advanced by the complainant under the contract.    On the first hearing of the case, the chancellor (Hon. H. C. SPEAKE) refused a specific performance, but rendered a decree rescinding the contract; and his decree was affirmed by this court, on appeal by the defendants, as shown by the former report of the case.

The decree from which that appeal was taken was in these words: "It appearing to the satisfaction of the court that the complainant is entitled to relief, it is therefore ordered, adjudged, and decreed, that the respondents be, and they are each, forever enjoined and restrained from the further prosecution of the judgment by them recovered against the complainant, John Harrison, in the Circuit Court of Colbert county, described in the pleadings in the cause.    It is further ordered, adjudged, and decreed, that the contract entered into by and between the said John Harrison and Thomas B. Jenkins, on April 3d, 1871, be, and the same is hereby, rescinded; and that said contract and the deed executed by John Harrison and wife to Thomas B. Jenkins, and the one executed by Thomas B. Jenkins and wife to John Harrison, each of date April 13, 1871, be, and they are hereby, each declared null and void, and of no effect. It is further ordered, adjudged and decreed, that all title in and to the house and lot in South Florence, known in the plan of said town as No. 39, be, and the same is hereby, divested out of the respondents, and invested in the said John Harrison. It is further ordered, adjudged, and decreed, that the respondents, by the next term of this court, select of the lands described in the bill," a tract containing 240 acres, "eighty acres thereof, upon which is situated the dwelling and appurtenances

31

[McWilliams v. Jenkins.]

thereunto belonging that was occupied by said Thomas B. Jenkins at the time of his death; and after such selection, it is further ordered, adjudged, and decreed, that the register ascertain how much is the yearly rental value of said eighty acres, from the time said Harrison obtained the possession thereof, and that he also ascertain the yearly rental value of the remaining one hundred and sixty acres of said tract; also, that he ascertain the yearly rental value of said house and lot in South Florence (No. 39), from the time said Thomas B. Jenkins and respondents obtained possession thereof.    It is further ordered, adjudged, and decreed, that the register ascertain how much the said Harrison paid for the said land attempted to be sold to him by the said Jenkins, either to the said Jenkins himself, or to his personal representative since his death, embracing the value of the stock of dry-goods, &c., the cash paid, and the amount said Jenkins was due and owing Harrison at the time of the death of said Jenkins, and for which Harrison has given his estate credit; deducting from said sums the amount of one thousand dollars, the value fixed by the parties upon the said store-house and lot in South Florence, and calculating interest thereon to the time of making his report, and also on each of the rental values ordered to be ascertained.    .    .    .    All other questions are reserved until the coming in of said report."

In his opinion accompanying this decree, after declaring that the complainant was not entitled to a specific performance, the chancellor said :    "I think this a proper case for the rescission of the entire contract, and placing the parties, as nearly as possible, *in statu quo*.    To do this, it would be proper that the deed executed by Harrison to Jenkins should be delivered up and cancelled ; Jenkins to account for the rents of the lot and store-house thereby conveyed ; the respondents to select the eighty acres, including the dwelling and appurtenances thereon situated, which is exempted by the constitution as a homestead ; also, to refer it to the register to ascertain the amount, with interest, paid by Harrison to Jenkins, or to his administrators, embracing the goods, cash, and indebtedness of Jenkins to Harrison at the time of his death, deducting from the original sum $1,000, the agreed value of the house and lot in South Florence ; also, to ascertain the value of the rents of the lands selected as exempt, and the value of the rents of the remaining lands ; to deduct the rents thus ascertained, from the whole amount paid by Harrison, and condemn the 160 acres of land not exempted, for the satisfaction thereof ; that Harrison pay the rent ascertained to be due for the homestead exemption, less the rent of the house and lot in South Florence ; also, to enjoin the judgment rendered in the Circuit Court, and, if the

administrator *de bonis non* was a party defendant, to enjoin the further prosecution of the suit upon the note."

The complainant having died pending the appeal in this court, the suit was revived in favor of John A. McWilliams, the present appellant, as his administrator; and said administrator filed an amended bill, after the remandment of the cause, alleging that his intestate's estate had been reported and declared insolvent. The register afterwards executed the order of reference made in the first decree, and no exceptions being reserved to his report, it was confirmed by the court on the 11th October, 1882; and on the same day a decree was rendered, which, after referring to the affirmance by this court of the former decree, proceeded thus:

" And in order to adjust the equities in said cause, in accordance with the principles established in said decree, the court now proceeds to render a decree. (1.) It appears from the report of the register, read and confirmed, that the rental value of the eighty acres of land, with interest, amounts to the sum of $3,192.80, and the rental value of the house and lot in South Florence to $1,192; which, when deducted, leaves the sum of $2,000 due to Annie A." and the other children' of Thomas B. Jenkins, " from the estate of said John Harrison. (2.) It appears from said report, also, that said Harrison paid to said Jenkins in his life-time, and to his personal representatives, the sum of $5,373.78; from which deducting value of house and lot ($1,000), and adding interest for eleven years and six months ($4,023.87), makes the amount of $8,397.65; from which deducting the rental value of the 160 acres of land, with interest, amounting to $3,456.81, leaves amount due from estate of Jenkins to estate of Harrison, $4,940.85. (3.) It is ordered, adjudged, and decreed, that said complainant, as the administrator of the estate of said Harrison, recover of R. B. Lindsay, as the administrator of the estate of Thomas B. Jenkins, deceased, the said sum of $4,940.85, subject to be credited by the proceeds of the sale of the 160 acres of land, as hereinafter directed; and it appearing that the estate of said Jenkins has been declared insolvent, no execution will issue, but the claim must be certified by the register to the Probate Court. (4.) It is ordered, adjudged, and decreed, that the following lands," particularly describing the 160 acres, "are condemned for the satisfaction of the complainant's demand, less the amount, hereinafter specified, in favor of the heirs of said Jenkins, and the costs of this suit. (5.) It is ordered, adjudged, and decreed, that the register proceed to sell the said lands above described," specifying the terms, &c.; " and out of the proceeds he will first retain the costs and expenses of sale, and the sum of $2,000, with interest on the same from the date of this decree, to meet

[McWilliams v. Jenkins.]

the further order of this court in regard to the application of the same to" the infant children of Jenkins, "and apply the residue to the credit of complainant's claim; and the register will make conveyance to the purchaser. (6.) It being made further to appear that the estate of said Harrison is insolvent, it is ordered, adjudged, and decreed, that the claim of the heirs of said Jenkins," naming them, "be certified by the register of this court to the Probate Court, to be filed against said estate, subject to be credited by the proceeds of the sale of the lands above directed. (7.) It further appearing that the homestead has been selected, as by the former decree of this court," describing the lands, "it is therefore ordered and decreed, that the administrator of the estate of said Harrison deliver possession of the same to the party or parties authorized to receive it. (8.) All other questions not determined are reserved until the coming in of the register's report of sale."

Pending the cause after the remandment, the complainant's solicitors filed a petition, asking a reference to the register to ascertain and report what would be a reasonable fee for their services in the cause, and that it be declared a lien on the land ordered to be sold. The reference was ordered, and executed; but the record does not show any action by the chancellor on the register's report.

The appeal is sued out by Harrison's administrator, and he here makes seven assignments of error, all founded on the decree above copied. The assignments of error are, in substance, that the decree is inconsistent with the former decree which was affirmed; that the complainant's lien on the land was superior to the right or equity of the heirs of Jenkins, and should have been so declared; that the claim of the heirs should have been certified to the Probate Court; and that a lien on the land, or its proceeds, should have been declared in favor of complainant's solicitors.

Wm. Cooper, and Thos. H. Watts, for appellant.—(1.) By the former decree, which was affirmed by this court, the proceeds of sale of the 160 acres of land was condemned to the satisfaction of the debt due to Harrison's estate, and was ordered to be applied first to the satisfaction of that claim; while the last decree, from which this appeal is taken, makes that fund first chargeable with the $2,000 found due to the defendants for rent. These matters are *res adjudicata*, and the latter decree is erroneous so far as it departs from the former.— *Wyatt v. Steele*, 26 Ala. 647; *Miller v. Jones*, 29 Ala. 174; *Bryant v. Boothe*, 35 Ala. 269; *Meredith v. Naish*, 4 Stew. & P. 59; *Thomas v. Dill*, 34 Ala. 175. (2.) The estate of Harrison having been declared insolvent, the claim for $2,000 on account

[McWilliams v. Jenkins.]

of rent should have been certified to the Probate Court, and paid *pro rata* with other claims against the estate. When an estate is declared insolvent, the decree invests the Probate Court with exclusive jurisdiction of all claims against the estate, including pending suits.—*Ray v. Thompson,* 43 Ala. 451; *Edwards v. Gibbs,* 11 Ala. 294; *McEachin v. Reid,* 40 Ala. 411; *McGehee v. Lomax,* 49 Ala. 131. (3.) The complainant's solicitors have a lien on the fund recovered in this case, for their professional services rendered; and the court should have so decreed.—*Jackson v. Clopton,* 66 Ala. 29; *Warfield v. Campbell,* 38 Ala. 527; *Ex parte Lehman, Durr & Co.,* 59 Ala. 631. (4.) The correctness of the former decree, giving the complainant a lien on the land for the purchase-money paid, can not be questioned.—*Aday v. Echols,* 18 Ala. 353; *Gressett v. Foster,* 29 Ala. 393: Fry on Specific Performance, § 939; *Griffith v. Depew,* 3 Mar. Ky. 177. This lien is entirely destroyed by the last decree, giving a prior lien to the heirs of Jenkins for an amount which will absorb the fund.

J. B. MOORE, *contra.*—(1.) There is no real discrepancy between the first and the last decrees; indeed, the first could be carried into effect in no other way than was done. The homestead was never subject to the complainant's demand, nor to any other debts which Jenkins owed; and the rents accruing to his children, while the homestead was in the possession of Harrison, can not be applied to the payment of their ancestor's debt. (2.) This equity of the children accrued before the estate of Harrison was declared insolvent, and their lien can not be destroyed or affected by the declaration of insolvency. (3.) The question of the attorney's lien is not presented to this court, since it was not acted on by the chancellor.—22 Ala. 106; 28 Ala. 569; 20 Ala. 392; 18 Ala. 482. If the question were presented, it is submitted that no lien on the land is shown, under the authorities cited for the appellant.

SOMERVILLE, J.—The bill was originally one for specific performance, brought by the intestate, Harrison, against the appellees, as heirs of one Jenkins, to compel the conveyance of certain lands. The proof in the cause showing a failure of title to a portion of the land, constituting *the homestead* of the decedent and his family, which was attributable to an incurable defect in the instrument purporting to alienate it, the chancellor rescinded the contract of conveyance, and made a decree on September 17, 1877, the ultimate purpose of which was to put the parties, or their privies in estate, *in statu quo,* as far as was practicable under the circumstances. This decree was affirmed,

[McWilliams v. Jenkins.]

on appeal taken to this court, at the December term, 1880. *Jenkins v. Harrison*, 66 Ala. 345.

The decree here appealed from was rendered October 11, 1882. The first decree did not go further than to declare a cancellation or rescission of the contract of sale, and to refer to the register the ascertainment of certain amounts and valuations, a knowledge of which was necessary in definitely fixing the mutual rights of the litigants. The decision of all other questions was expressly reserved until the coming in of the register's report. It is noticeable, that the *opinion* of the chancellor, accompanying the first decree, went much further than the *decree* itself, which is a separate and distinct paper. But this fact is obviously immaterial, as it was *the decree, and not the opinion* of the chancellor, which this court affirmed on the last appeal. Attention is called to this feature of the case, because it is insisted in argument that this supposed repugnancy now affects the merits of the present decree. It is enough to say, that we see no conflict in the two decrees, whatever may be said of the first opinion by a former chancellor.

It is not denied, by either party, that upon the rescission of the contract in question, the court possessed the power, as was also its duty, to secure the purchase-money paid by the vendee, Harrison, by giving a lien, or creating a charge on the land, for its re-payment. This right to protect vendees, by thus securing them in the reimbursement of their purchase-money, advanced upon the faith of the contract, is well established in our system of equity procedure, and constantly invoked in the every-day practice of the courts.—*Aday v. Echols*, 18 Ala. 353; Fry on Specif. Perf. § 939; Sugden on Vendors, 62–63. This lien is properly confined, however, to such lands as the vendor has the lawful right to convey.

The point of contention in this case is, that while the chancellor declared such a lien in favor of the appellant, as the personal representative of Harrison, it was made subordinate to a prior lien given to the heirs of Jenkins, for the rents of the homestead property, which were virtually collected by Harrison, and appropriated to his use, while he was in possession of the land, claiming it as purchaser under the original contract of sale, proved to have been made by Jenkins. We are of opinion that the views of the chancellor were correct. These rents, amounting to the sum of two thousand dollars, as is shown by the report of the register, were the moneys of the defendants. They had accrued from the use and occupation of the homestead, to which Harrison had no title, or lawful claim of any kind. They were appropriated by him in the payment of his claim against the estate of the vendor, Jenkins, and thus went in exonera-

tion of the hundred and sixty acres of land, upon which the charge or lien is declared. The land was thus relieved, *pro tanto*, of an incumbrance upon it. The chancellor merely decrees that the heirs of Jenkins, whose money went to pay this charge, shall be subrogated to Harrison's lien for their reimbursement. The payment of the incumbrance was thus adjudged to be rather a purchase than an extinguishment, which is the very essence of every similar subrogation. This equity does not originate in contract, or agreement between the parties; but it is the mere creature of equity, based on principles of justice, and designed to prevent its failure. It is nothing more than the putting by transfer one person in the place of another, and investing the former, in promotion of fair. dealing, with the equitable rights of the latter.—Sheldon on Subrogation, §§ 1, 11, 62, 206, 209, 212–13.

There is no force in the suggestion, that this view operates to give mere *donees* a precedence over a *creditor* of the decedent. If the heirs of Jenkins had inherited property liable to be charged with the debts of the decedent, the argument might be sound. But the land, from which the rents in question accrued, was *a homestead*, which was exempted from liability to legal process for the payment of the decedent's contract debts of any character. The conveyance of such property by a husband to a member of his own family, even though voluntary, has been held not to be fraudulent.—*Lehman v. Bryan,* 67 Ala. 558; *Fellows v. Lewis,* 65 Ala. 343. The reason is, that the creditors have no right to pursue exempted property for the satisfaction of their claims, and hence their legal rights can not be prejudiced by a conveyance of it.—*Shirley v. Teal,* 67 Ala. 449; Thomp. on Homesteads, §§ 411–12; Bump on Fraud. Conv. 268. This reason becomes still more forcible, when there is a devolution of title effected by operation of law, instead of by act of the owner, made manifest by a voluntary conveyance.

The *lien,* which an attorney at law has for his stipulated or reasonable fees, is limited to the judgment recovered in the particular cause in which the professional services were rendered. He is regarded as an assignee of the judgment or decree, *pro tanto*—to the extent of his fee—from the date of its rendition. It is consequently subordinate to all counter claims, or sets-off, existing at the time, including, of necessity, such as are allowed prior to the rendition of the judgment.—*Jackson v. Clopton,* 66 Ala. 29; *Ex parte Lehman, Durr & Co.,* 59 Ala. 631; *Warfield v. Campbell,* 38 Ala. 527. It does not extend to the lands, or other like property, which is the subject-matter of litigation belonging to the client.—*Hinson v. Gamble,* 65 Ala. 605. The solicitors of the appellant would be entitled to no lien, extending beyond the amount of the decree

[Totten & Brother v. Sale & Co.]

obtained for their client. Their rights are guaged by, and must be commensurate with his.

The decree of the chancellor is affirmed.

BRICKELL, C. J., dissenting.