[Mosely & Eley v. Norman.]

# Mosely & Eley *v.* Norman.

*Bill in Equity by Administrator and Guardian, for Settle-ment of Accounts ; Petitions by Solicitor and Intervening Creditor.*

1. *Attorney's lien on judgment or decree.*—As a general rule, an attor-ney or solicitor has a lien on a judgment or decree obtained by him for his client, to the extent of reasonable compensation for services rendered and disbursements made in the particular case ; he being regarded, to this extent, as an equitable assignee of the judgment or decree from the day of its rendition, and entitled to protection against collusive dealings between his client and the adversary party ; but the lien extends no further, and it is subordinate and inferior to the right of set-off, as against the client, of all existing debts or demands, the subject of set-off at the time the judgment or decree was rendered.

2. *Contracts of administrators, guardians, and other trustees; remedy of creditor, as against estate* —The contracts of guardians, administrators, or other trustees, though made in execution of the trust, and in the per-formance of a legal duty, impose upon them a personal liability, and create no liability against either the trust estate or the beneficiaries ; but,. if the estate is indebted to the trustee on settlement of his accounts, and he is insolvent, as shown by the exhaustion of legal remedies against. him, and the contract has enured to the benefit of the trust estate or its beneficiaries, a court of equity will subrogate the creditor to his rights against the estate.

3. *Approval of voluntary act which court would have compelled.*—A court of equity often regards that as done which ought to have been done ; and when the parties voluntarily agree to do that which the court would compel them to do, the court will uphold and give effect to the agreement.

4. *Same; conflicting claims of attorney and creditor, to judgment in favor of administrator.*—An administrator and guardian having con-tracted debts for the benefit of his wards, the distributees, and, on final settlement of his accounts under a bill filed by him, having been allowed a credit for the amount of the accounts, on the production of the cred-itor's receipt, and thereby obtained a decree against the estate for that amount ; and it being shown that the receipt was given under an agree-ment·that the decree should enure to the benefit of the creditor, that the allowance of the credit was not contested, and that the trustee was in-solvent ; *held,* that the court, giving effect to the agreement, would up-hold an assignment of the decree to the creditor, against the lien of the attorney and solicitor for services rendered in the settlement.

APPEAL from the Chancery Court of Bullock.

Heard before the Hon. JOHN A. FOSTER.

This was a contest between the appellants, partners doing business under the firm name of Mosely & Eley, and James. T. Norman, an attorney at law and solicitor in chancery, as to their respective rights to a fund in court, amounting to $252.77.

The money was paid into court by James McLaney, as the administrator *de bonis non* of the estate of James L. Powell, deceased, being the amount due on a decree against the estate, in favor of A. J. Pittman, the former administrator. The decree was rendered on the 15th March, 1882, under a bill filed by said Pittman, which is not set out in the record, but which seems to have been filed for the purpose of settling his administration of said estate. Norman claimed a lien on the fund, for his compensation on account of professional services rendered in the cause for the complainant; and having filed his petition asserting his lien, the register reported, by consent, that $230 was a reasonable fee for his services. Mosely & Eley claimed the money under an assignment of the decree to them by said Pittman, which was dated the 18th March, 1882, and in these words: " For value received, I hereby transfer, assign, sell and convey to Mosely & Eley the decree in my favor against said estate, amounting to $205.41; with full power to them to collect the same in my name, or otherwise, as by law required in such cases."

In their petition propounding their claim, Mosely & Eley alleged that the bill was filed by said Pittman, as administrator, " praying, among other things, for the ratification of certain acts done by him as the guardian of certain minor heirs of said Powell, and that certain sums of money expended by him as such might be allowed him as credits as administrator with the will annexed of said Powell;" that a reference to the register was ordered, for a statement of the accounts between the administrator and the estate; that said Pittman, " before that time, had purchased and obtained from these petitioners, for the use and benefit of R. H. Powell, one of the minor heirs of said estate, necessary goods, wares and merchandise, and cash money, amounting to $122.97," and for B. F. Powell, another minor heir, to the amount of $82.71; that while the reference was being held by the register, these accounts " being outstanding and unpaid, and said Pittman being insolvent and unable to pay the same, he proposed that your petitioners should receipt said accounts, so that he might use them as vouchers on his said settlement, and get credits for the same against said estate , stating that said accounts, if allowed, would swell his account against the estate, and thereby probably secure to him a decree against the estate, which decree, if so rendered, he offered and agreed to transfer and assign to your petitioners, to secure the payment of said accounts to them, in whole or in part, as said decree might be sufficient;" that the accounts were accordingly receipted by them, and were used on the settlement by said Pittman, and were allowed to him as proper credits, and made the balance decreed in his favor; and that

[Mosely & Eley v. Norman.]

the decree was assigned to them by him, a few days after its rendition, in pursuance and fulfillment of this agreement.

The chancellor sustained a demurrer to the petition of Mosely & Eley, interposed by Norman, and declared a lien on the fund in his favor; and this decree is now assigned as error.

WATTS & SON, and N. B. FEAGIN, for appellants, cited *Donald & Co. v. Hewitt*, 33 Ala. 534; *Stearns v. Gafford*, 56 Ala. 544; *Ellington v. Charleston*, 51 Ala. 166; *Mervine v. White*, 50 Ala. 388; *Coopwood v. Wallace*, 12 Ala. 790; *Mulhall v. Williams*, 32 Ala. 489; *Ex parte Lehman, Durr & Co.*, 59 Ala. 631.

H. C. TOMPKINS, *contra*, cited *Warfield v. Campbell*, 38 Ala. 527; *Marshall v. Meech*, 51 N. Y. 140; *Andrews v. Moore*, 12 Conn. 444; *Jackson v. Clopton*, 66 Ala. 29; *Sexton v. Pike*, 13 Ark. 193; *Hutchinson v. Howard*, 15 Vermont, 544; *Hunt v. McClanahan*, 1 Heisk. 503; Weeks on Attorneys, §§ 368–70; Freeman on Judgments, § 211; 31 Amer. Dec. 755, *Note*.

BRICKELL, C. J.—As a general rule, an attorney is entitled to a lien on a judgment or decree he may have obtained for his client, to the extent of reasonable compensation for the services rendered in and about the obtaining such judgment or decree. The lien does not arise or attach until the rendition of the judgment or decree, and it is limited to compensation for services rendered, or disbursements made for the client, in and about obtaining the judgment or decree. It is not a general lien, operating as a security for any other claim or demand, however meritorious it may be. For other debts, or for a general balance due him, the attorney may have a lien on papers or documents coming to his possession in the course of his professional employment; but that lien is distinguishable from the particular lien he may have on a judgment or decree.—Overton on Liens, 68. The theory upon which the particular lien rests is, that from the day of its rendition the attorney or solicitor is regarded as an equitable assignee of the judgment, to the extent of the compensation and disbursements justly due him.—*Ex parte Lehman*, 59 Ala. 631. The lien is protected against all collusive dealings between the client and the party against whom the judgment or decree is rendered; but it is subject to, and may be defeated by the right to set off against the client existing debts or demands, the matter of set-off when the judgment or decree is rendered.—*Ex parte Lehman, supra; Jackson v. Clopton*, 66 Ala. 29. It is indispensable to the existence of the lien, that services should have been rendered, or disbursements made, in and about obtaining the particular judgment or

decree.   A mere general debt due to the attorney is not the foundation of the lien.—*Jackson v. Clopton*, 66 Ala. 29.

The decree now in controversy is for the balance found due Pittman, the guardian and administrator, upon the final settlement of the trusts of his administration in each capacity.   The balance originated from the allowance to him, as credits, of accounts he had contracted with the appellants, for necessaries for the use of the infant wards.   The credits could not have been allowed, the balance could not have been created, unless Pittman had produced the accounts, accompanied with evidence of their payment.   Such evidence Pittman obtained from the appellants, upon an agreement that the balance found due to him, in consequence of the allowance of the accounts, should enure to their benefit, and should be appropriated and applied in payment of the accounts due them; and after the rendition of the decree, he made a formal written assignment of it for that purpose.   The accounts were the mere personal debts of Pittman, not creating any liability upon the infant wards; and from them, though they were for necessaries enuring to the use of the wards, the appellants could not claim an equity to pursue and subject their estates.   The purchases of trustees, including executors, administrators, or guardians, though made in execution of the trust, and in performance of duty resting upon them, create a personal liability.   The seller can look to them only for payment, and they must look for reimbursement, after making payment, to the trust estate.—*Sanford v. Howard*, 29 Ala. 684. But if, upon a settlement of the administration of the trust estate, the estate is indebted to the trustee, and he is insolvent, the insolvency being shown by the exhaustion of legal remedies, and the purchases have enured to the benefit of the trust estate, or to the benefit of the *cestuis que trust*, the inference from the former decisions of this court is just, that a court of equity would interfere for the relief of the creditor, and, so far as necessary for his protection, subrogate him to the rights of the trustee against the trust estate.—*Askew v. Myrick*, 54 Ala. 30, and authorities cited.   It was, doubtless, in this view of the legal and equitable rights of the parties, that the agreement between them was made, which, when carried into effect, as it was intended it should be, simply operated to dispense with the pursuit of legal and equitable remedies.   When parties agree to do that to which they can be compelled, the agreement is favored in law, and it will be carried into effect.   The maxim upon which a court of equity proceeds, of regarding that as done which ought to have been done, is liberally applied to such agreements.—1 Story's Eq. § 64; *Wilson v. Sheppard*, 28 Ala. 623; *Marks v. Cowles*, 53 Ala. 499; *Foscue v. Lyon*, 55 Ala. 440.

The lien of an attorney has in it much of an equity, espe-

[Mosely & Eley v. Norman.]

cially in its operation upon judgments or decrees; and in its protection and enforcement, a court of law exercises its inherent powers to regulate and control its own process, often denominated the equitable powers of the court. There is much of justice in the observation of a recent writer : " Courts, being bound to protect the attorney so far as possible, will always examine and inquire into the equities of the case, and will sustain or defeat the lien accordingly."—Overton on Liens, 84. An assignment of the subject-matter of suit, while the suit is pending, or of the judgment or decree after its rendition, ought not to affect, and is not allowed to affect, the lien of an attorney or solicitor upon the judgment or decree; the assignment is subordinate to the lien. But that is not the case before us. The accounts due to the appellants were not within the scope of the *lis pendens;* and until their payment by the guardian and administrator, or until evidence of payment was obtained, upon which the court would act, they could not be drawn within its scope. When that evidence was obtained, by the agreement of the parties at the time it was given, and upon the faith of which it was induced, the balance due to the guardian and administrator, arising from the credit for the accounts, was appropriated for the benefit of the appellants, who had not actually received payment. The credit obtained for the accounts created the balance now due; but for such credit, the balance would not exist.

If the solicitor had rendered service in obtaining an allowance of such credit, and in the consequent creation of such balance, a lien for reasonable compensation for such service would be just and equitable. But it is not just and equitable that a lien should be attached for the general balance due to him, for all the services rendered by him in the particular case. The practical effect of such allowance is, not only to defeat the equity of the appellants, to nullify the agreement upon which they acted, but to compel them to create a fund for the benefit of the solicitor. In consideration of all the equities of the case, the prior equity of the appellants ought to prevail over the lien asserted by the solicitor for the general balance due him for the services rendered in the case, in which the sum due from the trust estate was ascertained and allowed to the guardian and administrator; that sum consisting wholly of a consideration moving from the appellants. In the ascertainment and allowance of this sum, there is no evidence that the solicitor rendered any service, nor does it seem there was occasion or necessity for such service. There was no contest of the justness of the accounts, or that they formed proper matter of credit for Pittman ; and there could not be occasion for the rendition of professional services in their allowance. The

whole theory upon which the lien is asserted, is that the balance created by the allowance of the accounts can be subjected to the payment of the general balance due to the solicitor for the services previously rendered in the case, and which are not connected with the allowance of the accounts. This is not just or equitable. Carrying into effect the equity of the appellants, from whom the consideration moved, prior in point of time to the origin of any lien which could accrue to the solicitor, is just and equitable; and it is strictly in accordance with the principle that limits the lien of an attorney or solicitor upon a judgment or decree, to compensation for services rendered, or disbursements made in obtaining it.

The decree of the chancellor is reversed, and a decree is here rendered granting relief to the appellants.