ROBERT O'BARR, plaintiff in error, *vs.* ALEXANDER and TRAMMELL, defendants in error.

1. A letter written by a party to his attorney stating that he was sick and unable to travel, and asking the postponement of the trial of his case, is not a good showing for a continuance.

2. An attorney is bound to exercise reasonable care, skill and diligence in attending to the business of his client, and is liable in case he fails to do so.

3. Where judges and lawyers differ as to what the law is upon a given state of facts, it is not error in the Court, in such a case, to refuse to charge "that if the statute is plain, then it is not an intricate legal question."

4. Although the charge of the Court may not be strictly correct, yet, if from the whole case, it appears that justice has been done, a new tria should not be granted.

5. After a verdict has been rendered, a juror will not be heard to im. peach it. This is well settled.

6. A jury, while confined in the investigation of a case, should be furn. ished with refreshments only by the direction of the Court; and if there be competent evidence that any refreshments were furnished withou$_t$ such direction of the Court, it might be a good ground for a new trial.

7. To entitle a party to a new trial on the ground of newly discovered evidence, it should appear that material evidence relating to new and material facts has been discovered after the rendition of the verdict. The subsequent discovery of the materiality of facts previously known and understood, is not sufficient.

Case. Tried before Judge MILNER. Motion for new trial, decided by Judge UNDERWOOD. Floyd Superior Court. July Term, 1867.

John T. Alexander and Wm. T. Trammell, Attorneys at Law, made and delivered to O'Barr their receipt for the following note:

"$546,98. By the twenty-fifth day of December next, I

promise to pay Robert O'Barr or bearer, Five hundred and forty-six dollars ninety eight cents, for work done on hotel, with interest from date.    May 17th, 1851.

L. J. HILBURN."

They brought suit on it for O'Barr against Hilburn, in Floyd Superior Court, averring therein that the consideration of said note "was carpenter's work done by petitioner, his agents, servants and journeymen, on the building known as the Hilburn House in the city of Rome, in said county, which hotel is situated on premises (here at length fully described by metes and bounds) and for which a lien was filed," etc., making by the writ, and an amendment of it, a case for a mechanic's lien on said premises.

The case went, by consent, to the appeal. At the trial they obtained a verdict for the principal and interest with a lien on the one undivided fourth of said house and premises, and judgment was accordingly entered on the 7th of December, 1855.

But the money was not collected, and because of this failure to collect, O'Barr sued Alexander and Trammell. When this suit was filed, does not appear by the record, but the process thereon was dated 19th of October, 1858.

At the trial of this case, plaintiff's attorneys moved for a continuance, stating in their place that plaintiff was absent and they could not so well conduct the trial without his presence and aid; that the plaintiff had, for some time past, resided in St. Louis, Missouri, and, by his letters, induced them to believe that he would be present at the trial, until about the time the Court convened, they received from him a letter mailed and purporting to have been written in St. Louis, stating that he was sick and unable to travel, and asking a postponement of the trial till he could come. The motion was overruled and the case proceeded.

Plaintiff's attorneys read in evidence said suit of O'Barr vs. Hilburn and the accompanying lien-papers, etc. They then introduced the following oral evidence:

THOMAS G. WATERS testified that, he was Sheriff of Floyd county in 1853 and 1854; that said Hilburn's shares and

interest in said House were sold by witness at Sheriff's sale. This left Hilburn insolvent; the other *fi. fas.* against him were returned *nulla bona.*   Twelve of said shares were sold in May, 1853, for upwards of $1,000.00, and the balance of Hilburn's interest in said House was sold not long before or after said last date.

Trammell, one of these defendants, controlled some of the *fi. fas.* which were levied on, and sold said shares and ordered the levies made; he bought some of said twelve shares at said Sheriff's sale in May; his bid was $515.00, but he paid over only $75.00, saying that he had other *fi. fas.* to take the balance of his bid.

The money paid to witness as Sheriff, say about $400.00, was, by order of Court, applied to an old *fi. fa.* controlled by Col. Akin.   Trammell knew how the money was applied, and paid over the $75.00 to satisfy Akin's demand; but so as witness recollected, he did not claim any of the money for O'Barr.  Trammell had Akin's *fi. fa.* levied on the property.  The *fi. fas.* and execution docket being lost, witness could not tell what *fi. fas.* got the balance of the money, but it was all paid to *fi. fas.* against Hilburn.  The *fi. fa.* which sold the twelve shares was Morton & Courtenay vs. L. J. Hilburn.   All the purchasers paid their bids except Trammell.

R. D. HARVEY testified that an order of Court was taken at August Term, 1853, requiring the Sheriff to pay to Warren Akin, as attorney, 417.50 on a *fi. fa.* in favor of Baker & Hart vs. Hilburn and said *fi. fa.* was charged to Trammell, defendant, on the execution docket, 4th of October, 1853, and this was the last entry as to said *fi. fa.*  He knew the facts by an examination of the records before they were lost.

DANIEL S. PRINTUP testified that he controlled, as attorney, *fi. fas.* against Hilburn, about the time of the May sales; Hilburn, about that time, became insolvent.  Many *fi. fas.* against him were returned *nulla bona,* and he continued insolvent till this suit was brought.  Hilburn left Floyd county about that time; has now a valuable settlement of

land in his possession in one of the upper counties, but witness did not know whether he had paid for it.

W. T. TRAMMELL, defendant, testified that he failed to claim said money for O'Barr, because O'Barr, and Alexander and Trammell, as his attorneys, were claiming a lien on the whole building and premises, and not on Hilburn's interest only, and he thought they would sustain the lien on the whole, and because his *fi. fas.* were against Hilburn only and could not bind the interests of the other part owners, he thought by letting the said money go to said *fi. fas.* he would eventually get O'Barr's money ont of the interest of the other part owners; but he knew Hilburn did not own the whole house.

Hilburn now is in possession of a good settlement of land in Catoosa county; but witness did not know whether it was paid for. He paid out all of his bid to plaintiff's in *fi. fas·* against Hilburn, which plaintiff's witness represented, except the $75.00 that was coming to witness individually, and was paid back to him by George S. Black.

COL. WARREN AKIN testified that he represented the other part owners in the hotel in resisting O'Barr's lien, and he believed, till the Supreme Court decided the contrary, that said O'Barr had no lien, and he thinks Messrs. Wright and Shropshire, his associate attorneys, had the same opinion.

JUDGE JNO. W. H. UNDERWOOD testified that, as he recollected, the first time they went into a trial of O'Barr vs. Hilburn, Judge Irwin, presiding, ruled that O'Barr, being a sub-contractor, had no lien; but the case was then transferred to the appeal by consent, and on the appeal Judge Trippe held the contrary; that he thought between the attempted trial and the appeal trial the Supreme Court had made some decision, from which they inferred that they would sustain the lien on Hilburn's interest.

It was admitted that Alexander and Trammell represented O'Barr in Hilburn vs. O'Barr in the Supreme Court, and that that Court confirmed the judgment giving a lien on Hilburn's interest only. (See 19th Ga., 591.)

Sometime during the trial, defendant's attorneys wrote on the declaration a plea of the statute of limitations, but did not give plaintiff's attorneys notice of filing this new plea.

Plaintiff's attorneys requested the Court to charge the Jury "If the statute authorizing the mechanic to claim the money on sale of property by other *fi. fas.* is plain, then it is not an intricate legal question."

The Court refused so to charge, but charged that, to render an attorney liable for a mistake, he must have been grossly at fault or grossly negligent; he is not answerable for error in judgment upon points of new occurrence or of nice or doubtful construction. If the Jury believe from the evidence that O'Barr claimed and recorded a lien on the whole house and lot, and insisted that Hilburn was merely an agent for the Hotel Company, and if the Jury shall further find, from the evidence, that the Circuit Judge decided that there was no lien on the house and lot, and if the evidence shows that the money raised from the sale of Hilburn's interest in the house was paid out by order and judgment of the Court to other *fi. fas.* and if the evidence shows that other competent attorneys believed that no other lien existed in favor of O'Barr; if all of these facts exist, they are to be considered by the Jury in determining the question of reasonable skill or gross negligence.

The verdict was for the defendants, the jury having staid out some time.

There was a motion for new trial on the following grounds :

1st, 2d, 3d. Verdict contrary to the evidence, etc.

4th. Because the officer in charge of the jury told them that the Judge had said that, unless they soon agreed, he would keep them there a week or two without food, and by this, the jury was unduly influenced.

5th. Because a quart of whisky was furnished to and drunk by the jury (before they agreed on a verdict) without the knowledge of plaintiff or his attorneys.

6th and 7th. Because the Court erred in refusing to charge as requested, and in charging as he did.

8th. Because plaintiff was absent on account of sickness, and had he been present, he could and would have proved by Daniel S. Printup, Esq., who was in attendance on said Court, that plaintiff first discovered the existence of his cause of action against defendants, and their fraud and failure to claim said money, not over one month before this suit was brought. This was unknown to plaintiff's attorneys till after the trial, and they knew nothing of the plea of the statute of limitations till this term.

The 4th and 5th grounds were supported by Anthony, one of the jury, by an affidavit, stating that the jury sent word to Judge Milner that they could not agree, and that many of the jury understood, from the reply of the officer having charge of them, that they would be kept there one or two weeks without food unless they agreed ; that when they first went out, most of them were for finding for plaintiff, and before they agreed, a quart of whisky was furnished to them and they drank most of it.

It was admitted that the jury themselves sent for the whisky.

The eighth ground was supported by an affidavit by O'Barr made in Floyd county that he had been confined to his bed by a spinal affection and thus kept from coming to the Court in time for the trial; he came as soon as he could, but it was too late ; that had he been present he would have sworn, (and he would have had Col. Printup also testify,) that he did not know of his right to hold defendants liable for their negligence, etc., aforesaid, till about a month before his suit against them was brought, and that his counsel did not know these facts till after the trial : by an affidavit by R. D. Harvey, Esq., one of O'Barr's attorneys stating that he knew not said facts, stated in O'Barr's affidavit, till after the trial, and knew not of the plea of the statute of limitations till sometime during the trial : by an affidavit of Daniel S. Printup, Esq., stating that shortly before O'Barr's suit against these defendants was brought, he told O'Barr that these defendants should have claimed said money raised by the Sheriff, and they were liable to him for neglect; O'Barr seemed sur-

O'Barr *vs.* Alexander and Trammell.

prised as if this was the first he knew of it, he did not recollect when this conversation took place, it was not so long as three or four years before the commencement of this suit, but he thought it was a short time only before that, and that he did not tell plaintiff's attorney of this before said trial.

Judge Milner having left before the Court adjourned, Judge Underwood was then presiding, and was related to Trammell.   For this he was not willing to hear it, though counsel consented.   The motion was postponed, by order, till Judge Milner could hear it, at Chambers, at Floyd adjourned term, 1867.   Milner not being at that Court, by consent of counsel, Judge Underwood, there presiding, heard the motion, and refused the new trial.

Error was assigned upon this refusal, on the several grounds stated in the motion for new trial.

HARVEY and SCOTT, for plaintiff in error.

T. W. ALEXANDER and W. AKIN, for defendants in error.

WALKER, J.

1. The Court did right to refuse the continuance.   It was asked by the attorney on the ground that his client had written to him a letter stating that the client was sick and unable to travel.   This was no evidence of the fact of such sickness even if the showing in other respects had been sufficient.

2. An attorney, in the practice of his profession engages for reasonable skill and diligence, and is responsible for ordinary neglect.   Cox vs. Sullivan, 7 Ga. R., 148; and cases cited.   Perhaps this is about as definitely as his duties and liabilities can be defined.   What may be a want of skill in any particular case, or what may be ordinary neglect, must be decided by the facts and circumstances of the case which may be under consideration.  It is exceedingly difficult, if not utterly impossible, to lay down any general rule which should control the measure of liability in all cases.   Good faith must exist on the part of the attorney towards his

client, and when this is shown, the absence or presence of reasonable skill and diligence must in each case be determined by its own facts.    7 Ga. R., 147.

3. Attornies have entrusted to their management cases of difficulty and doubt, and it is not surprising that they commit mistakes of judgment in some instances.    Such mistakes do not necessarily render them liable for the consequences. Says Lord Mansfield, in Pitt vs. Yalden, 4 Burrow's Rep., 2060, "That part of the profession which is carried on by attorneys is liberal and reputable, as well as useful to the public, when they conduct themselves with honor and integrity; and they ought to be protected, where they act to the best of their skill and knowledge.    But every man is liable to error; and I should be very sorry that it should be taken for granted that an attorney is answerable for every error or mistake, and to be punished for it, by being charged with the debt which he was employed to recover from his client, from the person who stands indebted to him.    Not only counsel but judges may differ or doubt, or take time to consider. Therefore, an attorney ought not to be liable in cases of reasonable doubt."    Again, "An attorney is liable for the consequences of ignorance or non observance of the rules of practice of the Court; for the want of care in the preparation of the cause for trial; or of attendance thereon with his witnesses; and for the mismanagement of so much of the conduct of a cause as is usually and ordinarily allotted to his department of the profession.    Whilst on the other hand, he is not answerable for error in judgment upon points of new occurrence, or of nice or doubtful construction."    Godefroy vs. Dalton, 6 Bingh. Rep., 467, (19 E. C. L. R., 214): "It seems too hard to say an attorney would be bound to construe the section as applicable when the Judges of this Court differ in opinion as to whether it is or not."    Per Coleridge, J., Chapman vs. Van Toll, 8 Ellis and Bl. Rep., 407, (92 E. C. L. R., 407).

Let us examine the facts a little.    The lien of O'Barr purported to be upon the whole premises, and to enforce this lien was the duty of the defendants, if they could.    Judge

O'Barr *vs.* Alexander and Trammell.

Irwin had decided that the lien was not good because it was in favor of a sub-contractor.  Several lawyers of distinction in their profession, concurred with Judge Irwin in opinion.  Judge Trippe and the Supreme Court decided that the lien was not wholly good, nor wholly bad, but bound the interest of Hilburn in the premises.  Under this state of facts the Court very properly declined to instruct the jury that the question as to what were O'Barr's rights was one free from difficulty; for such was the effect of the request made of the Court.

4. Under the facts of the case the defendants were clearly protected by the statute of limitations; and, this is in effect admitted by the plaintiff, as his effort to procure a new trial on account of newly discovered evidence, to try to rebut this plea, pretty clearly shows.  Both upon the statute of limitations, and the merits of the case, the verdict should have been for defendants, and therefore a new trial should not be granted, for the errors apparent in the charge of the Court in this case.

5. The only evidence by which the verdict of the jury is sought to be impeached, is the affidavit of one the jurors. This Court has repeatedly held that a juror will not, after a verdict has been rendered, be heard to impeach his verdict. This is well settled, Coleman vs. The State, 28 Ga. R., 84.

6. If a jury be confined in the investigation of a case for a length of time, which exposes them to hunger and cold, the Court may, upon the application of the jury, direct them to be furnished, at the expense of the County, with such refreshments as he may deem proper.  Refreshments should not be furnished to the jury except by the direction of the Judge, and if refreshments be furnished without such direction it might, perhaps, be a good ground for a new trial, and more especially where spirituous liquors are furnished.  Perhaps, also, the Court might deem it proper to take other steps in the matter, to preserve pure the administration of justice, and vindicate the honor and dignity of the Court itself.  But to justify the setting aside a verdict, or taking other proceedings in the premises, the Court should be in-

O'Barr *vs.* Alexander and Trammell.

formed by competent evidence of the impropriety of the conduct of the jury.

7. The newly discovered evidence in this case was not sufficient to entitle the party to a new trial. It was not this discovery of new evidence, new facts, which the plaintiff made, but the materiality of facts long known and understood, which he wishes to make appear to be newly discovered evidence. To entitle a party to a new trial on account of newly discovered evidence it must appear that the newly discovered evidence relates to new and material facts, discovered after the rendition of the verdict, and not the ascertainment of the materiality of known evidence, which can serve as a cause for a new trial. Wright vs. The State, 34 Ga. R., 114; Rev. Code, Sec. 3665. Being satisfied with the verdict in this case, we think it best that the litigation should end.

Judgment affirmed.