NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: May 13, 2025

S24G0739.  COX-OTT et al. v. BARNES & THORNBURG, LLP et al.

BETHEL, Justice.

Following the dismissal of her lawsuit, Cynthia Cox-Ott sued attorney Jim Leonard and his firm Barnes & Thornburg, LLP, for professional negligence, alleging that Leonard's actions caused the unfavorable disposition of her case. The trial court granted summary judgment in favor of Leonard and his law firm, finding that they were shielded from liability by the so-called doctrine of judgmental immunity, a creature of the Court of Appeals' decisional law. The Court of Appeals affirmed on the same basis. We granted certiorari to consider whether the doctrine of judgmental immunity, as applied by the Court of Appeals in this case, correctly states the law of Georgia with respect to professional negligence claims against

attorneys and, if not, what the proper test is for the courts to apply.[1]
For the reasons explained below, we conclude that the Court of Appeals erred in its analysis of this issue, though we ultimately affirm its judgment on other grounds.

1. *Facts and Procedural History*

Cox-Ott consulted with Leonard in connection with a dispute with an insurer regarding the premium amount on a life insurance policy that was taken out to fund Cox-Ott's family trust. Following his own investigation into the dispute, Leonard discussed potential paths forward with Cox-Ott, and it was his understanding that Cox-Ott wanted to enforce the policy. Leonard thereafter outlined two potential strategies in a letter he sent to Cox-Ott, though Cox-Ott denied receiving this letter. Leonard explained that, in his opinion, the insurer could agree either to rescind the policy and return the premiums or to reform the policy to one better suited to Cox-Ott's needs.

---

[1] We appreciate the thoughtful amicus brief filed by a consortium of 28 law firms with a presence in Georgia.

After the insurer refused to reform the policy, Leonard recommended filing suit against the insurer, raising claims for fraud and reformation of the policy. The suit could have been brought in either Georgia or New York, and Leonard recommended that suit be brought in Georgia. According to Leonard, his recommendation was based on his experience that New York courts were "not as favorable to policyholders because there are so many major insurers . . . headquartered there, and NY law isn't as favorable . . . as Georgia," as "most calls go to the insurers, and not the insureds."

Leonard subsequently brought suit against the insurer in Georgia on behalf of the family trust, asserting state law claims for fraud, negligent misrepresentation, and reformation. The insurer removed the case to federal court and moved to dismiss, which the district court granted, finding that "the trust affirmed the policy by seeking its reformation" and that the merger clause contained within the affirmed policy barred the trust's fraud claims. See *C & C Family Trust 04/04/05 ex rel. Cox-Ott v. AXA Equitable Life Ins. Co.*, 44 FSupp3d 1247, 1256-1259 (B) (2) (N.D. Ga. 2014). The United

States Court of Appeals for the Eleventh Circuit affirmed the dismissal. See *C&C Family Tr. v. AXA Equitable Life Ins. Co.*, 654 Fed. Appx. 429 (11th Cir. 2016).

Cox-Ott, individually and as trustee for her family trust, then sued Leonard and Barnes & Thornburg for professional negligence, asserting that Leonard was negligent for electing to proceed under Georgia law rather than New York law and for asserting a claim for reformation rather than rescission, among other reasons. The trial court ultimately entered summary judgment against Cox-Ott, finding that the judgmental immunity doctrine precluded Cox-Ott's professional negligence claim. The Court of Appeals affirmed the trial court's determination that Cox-Ott's claims were barred by judgmental immunity, which it said "protects an attorney from liability for acts and omissions in the conduct of litigation which are based on an honest exercise of professional judgment." See *Cox-Ott v. Barnes & Thornburg, LLP*, 370 Ga. App. 615, 620, 622-626 (2) (a) (i)-(ii) (898 SE2d 619) (2024). In particular, the Court of Appeals held that research into the choice of law issue was not required in

4

order for Leonard's decision to be protected by judgmental immunity and that Leonard's recommendation as to venue was similarly protected because of his expertise and experience. Id. at 622-623 (2) (a) (i). The court also held that Leonard's recommendation to pursue reformation rather than rescission was likewise protected since it was "an honest exercise of professional judgment." Id. at 625 (2) (a) (ii). Finally, the court concluded that, irrespective of judgmental immunity, Cox-Ott could not establish the causation element of her professional negligence claims. Id. at 624 (2) (a) (i), 627-628 (2) (b). Thereafter, we granted Cox-Ott's petition for a writ of certiorari to determine whether "the doctrine of judgmental immunity applied by the Court of Appeals correctly state[s] the law of Georgia with respect to professional negligence claims against attorneys[.]"

2. *Analysis*

Before turning to the particulars of the judgmental immunity doctrine, it is helpful to contextualize our discussion with a consideration of the broader framework applicable to legal malpractice claims. An action for legal malpractice is a species of

5

professional malpractice, and as we have explained, "[a] professional malpractice action is merely a professional negligence action and calls into question the conduct of a professional in his area of expertise." *Lutz v. Foran*, 262 Ga. 819, 820 (2) (427 SE2d 248) (1993) (citation and punctuation omitted) (superseded by statute on other grounds). As a general matter, a claim for legal malpractice arises from "the breach of a duty imposed by the contract of employment between the attorney and the client[.]" *Villanueva v. First American Title Ins. Co.*, 292 Ga. 630, 631-632 (740 SE2d 108) (2013); *Lewis v. Foy*, 189 Ga. 596, 600 (6 SE2d 788) (1940) (an attorney's duty to act in accordance with the standard of care arises from the attorney-client relationship).

To prevail on a claim of legal malpractice, a plaintiff must establish three elements: "(1) employment of the defendant attorney, (2) failure of the attorney to exercise ordinary care, skill[,] and diligence, and (3) that such negligence was the proximate cause of damage to the plaintiff." *Leibel v. Johnson*, 291 Ga. 180, 181 (728 SE2d 554) (2012) (citation and punctuation omitted). "And in order

6

to establish the final element, the plaintiff must show that, but for the attorney's negligence in the underlying case, the plaintiff would have prevailed." *RES-GA McDonough, LLC v. Taylor English Duma LLP*, 302 Ga. 444, 446 (1) (807 SE2d 381) (2017) (citation and punctuation omitted).

We are concerned here with the second element — the attorney's failure to exercise ordinary care, skill, and diligence — that is, the element of breach of duty. "It is axiomatic that the element of *breach* of duty in a legal malpractice case — the failure to exercise ordinary care, skill, and diligence — must relate directly to the *duty* of the attorney, that is, the duty to perform the task for which he was employed." *Tante v. Herring*, 264 Ga. 694, 695 (1) (453 SE2d 686) (1994). In other words, once an attorney-client relationship exists, an attorney is duty-bound to exercise reasonable care in the performance of his or her services.

The standard of reasonable care is a hallmark of legal malpractice jurisprudence — and of professional malpractice jurisprudence, more generally. This Court first considered a claim of

legal malpractice more than 175 years ago, and we recognized then that "[a]n attorney is not bound to extraordinary diligence. He is bound to *reasonable* skill and diligence, and the *skill* has reference to the character of the business he undertakes to do." *Cox v. Sullivan*, 7 Ga. 144, 148 (1849) (emphasis in original). See also *O'Barr v. Alexander*, 37 Ga. 195, 201 (1867) ("An attorney, in the practice of his profession engages for *reasonable* skill and diligence, and is responsible for ordinary neglect." (emphasis supplied)). In acknowledging this principle, *Cox*, and later *O'Barr*, drew from decisions of the English common law, which had long assigned a duty of reasonable care to attorneys in the practice of their profession.[2] See, e.g., *Pitt v. Yalden*, 98 Eng. Rep. 74, 75 (1767); *Russell v. Palmer*, 95 Eng. Rep. 837, 838-839 (1767). See also *Reece v. Righy*,106 Eng. Rep. 912, 912 (1821); *Lanphier v. Phipos*, 173 Eng. Rep. 581, 583 (1838) ("Every person who enters into a learned

---

[2] "In 1784, our legislature adopted the common law of England as of May 14, 1776, as Georgia law, see OCGA § 1-1-10 (c) (1), and so it has long been the backstop law of Georgia." *Wasserman v. Franklin County*, 320 Ga. 624, 629 (II) (A) (1) (a) (911 SE2d 583) (2025) (citation and punctuation omitted).

8

profession undertakes to bring to the exercise of it a reasonable degree of care and skill. He does not undertake, if he is an attorney, that at all events you shall gain your case . . . ; nor does he undertake to use the highest possible degree of skill. . . . [H]e undertakes to bring a fair, reasonable, and competent degree of skill, and [the jury] will say whether, in this case, the injury was occasioned by the want of such skill in the defendant."); *Hart v. Frame*, 7 Eng. Rep. 670, 676 (1839) ("[W]hen an injury has been sustained which could not have arisen except from the want of such reasonable skill and diligence, or the absence of the employment of either on the part of the attorney, the law holds him liable."); *Shilcock v. Passman*, 173 Eng. Rep. 128, 130 (1836) ("[I]t is not every mistake or misapprehension of an attorney that will make him liable to an action for negligence . . . the question for us to consider is, whether the defendant has used reasonable skill and reasonable care."); 2 Ronald E. Mallen, Legal Malpractice §§ 19.2, 19.3 (2025 ed.) ("The English precedent influenced the American courts in the development of the liability rules applicable to a lawyer's error of judgment.").

9

While the standard of care required of an attorney remains constant, we also have emphasized the difficulty in more precisely defining an attorney's duty in a given case, explaining that

> [w]hat may be a want of skill in any particular case, or what may be ordinary neglect, must be decided by the facts and circumstances of the case . . . . Good faith must exist on the part of the attorney towards his client, and when this is shown, the absence or presence of reasonable skill and diligence must in each case be determined by its own facts.

*O'Barr*, 37 Ga. at 201-202. See also *Cox*, 7 Ga. at 147 ("What facts will constitute professional faith, and fulfill the requirements of professional honor, it would be in vain to attempt to ascertain by any general tests. Each case, in this regard, must be determined by its own facts.").

Critically, "mistakes of judgment" in "cases of reasonable doubt" — that is, "upon points of new occurrence, or of nice or doubtful construction" — do "not necessarily render [attorneys] liable for the consequences." *O'Barr*, 37 Ga. at 202 (citations and punctuation omitted). See also *Pitt*, 98 Eng. Rep. at 75 ("Not only counsel, but Judges may differ, or doubt, or take time to consider.

10

Therefore[,] an attorney ought not to be liable, in cases of reasonable doubt."); 1 Robert Maugham, A Treatise on the Law of Attornies, Solicitors, and Agents, § 2, *Of the Liabilities of Attornies and Solicitors, at the Suit of their Clients, for Damages for Neglect, Misconduct, and Unskillfulness*, 228 (1825) ("Where there exists any doubt, the attorney, in case of mistake, will of course derive the benefit of the doubt, and, according to the circumstances, be wholly or partially justified."). Rather, attorneys enjoy discretion in matters of professional judgment, and the inquiry focuses on whether the attorney used reasonable care in exercising that judgment which later proved to be mistaken. See *Pitt*, 98 Eng. Rep. at 75 (lawyers "ought to be protected where they act to the best of their skill and knowledge" and "conduct themselves with honour and integrity"); *O'Barr*, 37 Ga. at 202 (same).

These principles — the duty of reasonable care and the recognition that attorneys are not liable for mere errors in judgment made in the exercise of reasonable care — were again recognized in the decisional law of Georgia's appellate courts when legal

11

malpractice claims appear to have been filed more frequently in Georgia courts. See, e.g., *Berman v. Rubin*, 138 Ga. App. 849, 853 (227 SE2d 802) (1976) ("unless the law is so well settled, clear, and widely recognized, an attorney acting in good faith and to the best of his knowledge will be insulated from liability for adverse results"); *Hughes v. Malone*, 146 Ga. App. 341, 346 (247 SE2d 107) (1978) (similar). That landscape began to shift, however, following the Court of Appeals' decision in *Hudson v. Windholz*, 202 Ga. App. 882, 886-887 (3) (416 SE2d 120) (1992). In *Hudson*, which concerned a claim of legal malpractice, the Court of Appeals expounded on the long-standing principles regarding an attorney's liability for mistakes of professional judgment. But the *Hudson* court seemed to view these principles as comprising a new rule, positing that "Georgia has adopted the doctrine of judgmental immunity, holding [that] 'the tactical decisions made during the course of litigation require, by their nature, that the attorney be given a great deal of discretion.'" *Hudson*, 202 Ga. App. at 886 (3) (quoting *Berman*, 138

Ga. App. at 851 n.2).[3] As conceived by the *Hudson* court, the so-called judgmental immunity doctrine mandated that "'[t]here can be no liability for acts and omissions by an attorney in the conduct of litigation which are based on an honest exercise of professional judgment.'" Id. (quoting *Woodruff v. Tomlin*, 616 F2d 924, 930 (6th Cir. 1980)). Noticeably absent from *Hudson*'s discussion was any mention of the standard of reasonable care. Indeed, in assessing the defendant-attorney's actions, the *Hudson* court focused on subjective considerations, noting that the attorney had "assessed the relative strengths and weaknesses of the plaintiffs' claims" and "exercised his best, informed judgment[.]" *Hudson*, 220 Ga. App. at 886-887 (3). On that basis, the court went on to conclude broadly that "any error or mistake in judgment . . . is protected by the

---

[3] What *Hudson* characterizes as *Berman*'s holding actually appeared in footnote 2 of the *Berman* decision within a broader discussion about the standard of care applicable to legal malpractice actions — a discussion that was dicta and was unnecessary to *Berman*'s ultimate holding that the plaintiff had failed to establish the causation element of a legal malpractice claim. See *Berman*, 138 Ga. App. at 855 (the client "having failed to show that [the defendant attorney's] actions, and not his own, were the cause of his alleged injury, the grant of summary judgment to defendant [attorney] was not error").

13

doctrine of judgmental immunity and may not serve as the basis for a legal malpractice action[.]" *Hudson*, 202 Ga. App. at 887 (3). In essence, *Hudson* held that because the defendant-attorney had some strategic basis for the challenged action, the plaintiffs could not prevail on their legal malpractice claim. And in doing so, *Hudson* supplanted the long-standing analysis centered on the objective standard of reasonable care with a subjective analysis focused on whether a particular defendant engaged in an "honest exercise" of professional judgment and, as such, was entitled to judgmental immunity. Id. at 886 (3). And by focusing on the discretion afforded to an attorney without acknowledging the broader limitation of that discretion being exercised with reasonable care, *Hudson* materially altered the long-established standard. Critically, though, neither the well-settled decisional law of this state predating *Hudson* nor even the cases on which *Hudson* relied supports the excision of the reasonable-care standard from consideration of a legal malpractice claim. The *Hudson* court primarily relied on the United States Court of Appeals for the Sixth Circuit's decision in *Woodruff*, as well as its

14

own decision in *Berman*, but both those cases spoke at length about the standard of reasonable care as applied to the exercise of professional judgment. And both cases recognized that an attorney could be held liable for mistakes in professional judgment where he failed to use reasonable care in exercising that judgment. See *Woodruff*, 616 F2d at 930 ("To hold that an attorney may not be held liable for the choice of trial tactics and the conduct of a case based on professional judgment is not to say, however, that an attorney may not be held liable for any of his actions in relation to a trial. He is still bound to exercise a reasonable degree of skill and care in all his professional undertakings."); *Berman*, 138 Ga. App. at 854 (where client sued attorney for legal malpractice in connection with attorney's construction of contract that later proved erroneous, noting that "it would otherwise be a jury question as to whether or not defendant [attorney] breached his duty towards [his client]" but rejecting claim for lack of proximate cause). Accordingly, we overrule

*Hudson* and the decisions relying on it[4] to the extent they omit consideration of the reasonable care standard when analyzing a legal malpractice claim.[5]

Because the Court of Appeals was bound by *Hudson*, it faithfully followed that decision's missteps in this case, focusing on whether the record showed that Leonard "engaged in an honest exercise of professional judgment," *Cox-Ott*, 370 Ga. App. at 622 (2) (a) (i), 625 (2) (a) (ii), rather than whether Leonard exercised

---

[4] See, e.g., *Rollins v. Smith*, 353 Ga. App. 209, 214-215 (2) (a) (836 SE2d 585) (2019); *Engelman v. Kessler*, 340 Ga. App. 239, 244 (1) (797 SE2d 160) (2017); *Mosera v. Davis*, 306 Ga. App. 226, 232 (2) (701 SE2d 864) (2010); *Guerrero v. McDonald*, 302 Ga. App. 164, 167-168 (2) (690 SE2d 486) (2010); *Allen Decorating, Inc. v. Oxendine*, 225 Ga. App. 84, 88 (2) (483 SE2d 298) (1997).

[5] We note that the moniker "judgmental-immunity doctrine" is a misnomer that should be discarded. As courts in other jurisdictions have recognized, the judgmental-immunity "doctrine" does not, in fact, grant immunity to attorneys for actions or omissions based on the exercise of professional judgment. Instead, as our discussion above implies, "when courts discuss what has come to be called the 'judgmental immunity doctrine,' they are actually addressing the factual issue as to whether an attorney breached the standard of care." *Blanks v. Seyfarth Shaw LLP*, 89 Cal. Rptr. 3d 710, 743 (IV) (F) (Ct. App. 2009)). See also *Sun Valley Potatoes, Inc. v. Rosholt, Robertson & Tucker*, 981 P2d 236, 240 (II) (A) (Idaho 1999) ("Rather than being a rule which grants some type of 'immunity' to attorneys, [the judgmental-immunity doctrine] appears to be nothing more than a recognition that if an attorney's actions could under no circumstances be held to be negligent, then a court may rule as a matter of law that there is no liability.").

reasonable care in reaching that judgment. For example, the Court of Appeals reasoned that Leonard's recommendation as to whether New York or Georgia law would be more advantageous was "the type of tactical decision made during the course of litigation that the judgmental immunity doctrine is designed to protect," suggesting that an attorney will be shielded from liability for actions and decisions that are part and parcel of conducting litigation. See *Cox-Ott*, 370 Ga. App. at 624 (2) (a) (i) (citing *Hudson*, 202 Ga. App. at 886 (3)). The court also emphasized that Leonard "was a seasoned litigator with experience litigating issues in both Georgia and New York" and that this experience formed the basis for his opinion that Georgia law was more favorable to Cox-Ott's position; on that basis, the court concluded that Leonard could not be held liable for his decision to proceed under Georgia law. Id. at 623 (2) (a) (i).

But the mere fact that an attorney's judgment is based on his experience does not automatically establish that the attorney exercised reasonable care in reaching that judgment such that he should be insulated from liability. Accordingly, in determining

17

whether Cox-Ott had established the requisite element of her malpractice claim, the Court of Appeals erred by considering only whether Leonard "engaged in an honest exercise of professional judgment," but instead should have determined, under the circumstances of this case, whether Leonard exercised reasonable care in reaching that judgment. Therefore, because it does not rest on an accurate statement of the law of professional legal malpractice in Georgia, we disapprove those portions of the Court of Appeals' decision relying on the doctrine of judgmental immunity in affirming the grant of summary judgment in this case.

Nevertheless, we affirm the Court of Appeals' judgment in this case. Besides concluding that Cox-Ott's claims were barred by judgmental immunity, the Court of Appeals also held that Cox-Ott failed to establish the causation element of her professional malpractice claim. See *Cox-Ott*, 370 Ga. App. at 624-626 (2) (a) (i)-(ii). Cox-Ott did not ask us to review this independent ground for affirmance of the judgment against it, nor did we grant certiorari to

18

address it,[6] so we do not disturb it. As a result, the judgment of the Court of Appeals must be affirmed on that basis. See *Brown v. Fokes Properties 2002, Inc.*, 283 Ga. 231, 233 (2) (657 SE2d 820) (2008) ("Since each of the alternative grounds which [appellant] fails to address is sufficient on its face to support the judgment rendered, and no reversible error has been demonstrated with respect to either of them, the judgment must be affirmed" (citation and punctuation omitted)); 5 C.J.S. Appeal and Error § 838 (2024) ("When a decision is based on alternative grounds, the fact that one of the grounds may be in error is of no consequence and may be disregarded on appeal if the judgment can be sustained on one of the other grounds.").

*Judgment affirmed. Peterson, CJ, Warren, PJ, and Ellington, McMillian, LaGrua, Colvin, and Pinson, JJ, concur.*

---

[6] Cox-Ott does not directly challenge this basis for the Court of Appeals' decision but rather complains that the Court of Appeals' conclusions as to causation were nestled within its analysis of the judgmental immunity issue such that reversing the Court of Appeals on its application of judgmental immunity would necessarily include reversing its holding on causation. However, causation is a separate element of a professional malpractice action, see *Tante*, 264 Ga. at 694 (1), and the Court of Appeals' consideration of that issue constituted an alternate rationale for affirming the grant of summary judgment. See *Cox-Ott*, 370 Ga. App. at 624-626 (2) (a) (i)-(ii).